EMERSON ELECTRIC CO., Appellant,

v.

The BLACK AND DECKER MANUFAC-TURING COMPANY, Inventec International Limited, Black & Decker Manufacturing Co., Limited, Hickmen Designs Limited in and through their agent, the Black and Decker Manufacturing Company, Appellees.

No. 79–1016.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1979.

Decided Sept. 18, 1979.

Lionel L. Lucchesi, Polster, Polster & Lucchesi, St. Louis, Mo., Lionel L. Lucchesi, St. Louis, Mo., for appellant.

Don K. Harness, Harness, Dickey & Pierce, Birmingham, Mich., argued, Richard E. Haferkamp, Rogers, Eilers & Howell, Clayton, Mo., on brief, for appellees.

Before HEANEY and STEPHENSON, Circuit Judges and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

MARKEY, Chief Judge.

Declaratory judgment action for patent invalidity and noninfringement by Emerson Electric Company (Emerson) against The Black and Decker Manufacturing Company (B&D), Inventec International Limited (Inventec), Hickman Designs Limited (Hickman), and Black and Decker Manufacturing Company of Canada (Limited). This appeal is from an order of Judge John F. Nangle, of the United States District Court of the Eastern District of Missouri, 460 F.Supp. 1238 (1978), denying B&D's motion to stay proceedings, denying Emerson's motion for

* HOWARD T. MARKEY, Chief Judge, United States Court of Customs and Patent Appeals, Washington, D.C., sitting by designation.

a temporary restraining order and preliminary injunction, and granting B&D's motion for transfer. We affirm.

## Background

### 1. The Maryland Suit

On October 26, 1971, U.S. patent No. 3,615,087 ('087 patent) issued to Ronald Hickman. In 1973, he assigned the '087 patent to Inventec, which subsequently granted an exclusive license to Limited. In 1975, Limited granted a sublicense for the entire United States to B&D, a Maryland corporation. B&D sells the workbenches under the registered trademark "Workmate."

In December 1975, Limited, as exclusive licensee, and Inventec, as owner and involuntary plaintiff, brought suit in Milwaukee against a Wisconsin manufacturer, Hempe Manufacturing Company (Hempe), for infringement of the '087 patent. Hempe was supplying a portable workbench, the "Porta Bench," to Sears, Roebuck and Company (Sears). The suit terminated, with a consent judgment enjoining Hempe from manufacturing or selling the "Porta Bench" or other workbenches infringing the '087 patent, in April, 1978.

In July, 1978, Sears began selling portable workbenches manufactured by Emerson, under Emerson's trademark "Work Buddy." On August 15, 1978, B&D as exclusive licensee and Inventec as owner, brought suit in the United States District Court for Maryland against Sears for infringement of the '087 patent, U.S. patent No. 4,076,229 ('229 patent),[1] and the trademark "Workmate." Maryland is the site of B&D's principal office and place of business, of its legal department, and of all records of engineering work, marketing, sales and advertising relating to its "Workmate" workbench.

Though not a party to the Maryland suit, Emerson is paying the cost of Sears's defense in compliance with an indemnification agreement.

### 2. The Missouri Suit

On October 3, 1978, Emerson filed this suit against Limited, B&D, Inventec, and Hickman to declare the '087 and '229 patents invalid and not infringed by the "Work Buddy" workbench, and to declare the trademark "Workmate" not infringed by "Work Buddy."

One month later, Emerson moved for a temporary restraining order and for a preliminary injunction enjoining B&D and Inventec from prosecuting the Maryland suit. B&D moved to stay the Missouri suit pending the outcome in Maryland, and in the alternative, to transfer this action to the district court in Maryland pursuant to 28 U.S.C. § 1404(a).[2] Limited, Inventec, and Hickman moved to dismiss as to them for lack of personal jurisdiction and insufficiency of service.

Judge Nangle granted the motions to dismiss based on affidavits establishing an absence of contacts of Limited, Inventec, and Hickman with the state of Missouri. 460 F.Supp. at 1239–40. He granted B&D's motion to transfer based on findings that B&D had a sufficient reason for suing Sears rather than Emerson, that convenience factors did not favor the second filed suit, and that a mere stay of proceedings in Missouri would work an injustice to B&D. Id. at 1241. In his order, Judge Nangle denied Emerson's motion for temporary restraining order and preliminary injunction "as moot."

B&D, Inventec, and Hickman moved to dismiss this appeal for lack of jurisdiction, asserting that the order to transfer was not appealable. We denied the motion without prejudice to appellees' right to raise the issue at oral argument.

1. The '229 patent issued to Inventec on February 28, 1978.

2. § 1404. Change of venue

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*Issues*

The issues are whether: (1) the order is appealable, (2) there was personal jurisdiction over Limited,[3] and (3) Judge Nangle abused his discretion in granting the transfer motion.[4]

OPINION

(1) *The order is appealable*

As explained in *Codex Corp.,* 553 F.2d at 737, our jurisdiction rests on 28 U.S.C. § 1292(a).[5]

Ordinarily, no appeal can be taken from district court orders on transfers between districts pursuant to 28 U.S.C. § 1404(a), *In re Josephson,* 1 Cir., 1954, 218 F.2d 174, 176–77; 9 Moore's Federal Practice ¶ 110.13[6] (2d ed. 1975), or from orders staying proceedings pending suit in another court, *Morales Serrano v. Playa Assoc., Inc.,* 1 Cir., 1968, 390 F.2d 593; 9 Moore, ante, ¶ 110.20[4.–2].[6] Although mandamus may be available in such cases, it will be granted, or even considered, only in "really extraordinary situations." *In re Josephson,* ante, at 183. However, the denial of an injunction against suit in another forum is appealable as of right, 28 U.S.C. § 1292(a), 9 Moore, ante, ¶ 110.20[1] at n. 22, and it has been held that in venue cases such as this the court of appeals will review the entire venue question as ancillary to the appeal from the disposition of the request for an injunction against a suit in another district. *Maryland v. Atlantic Aviation Corp.,* 3 Cir., 1966, 361 F.2d 873, *cert. denied,* 385 U.S. 931, 87 S.Ct. 290, 17 L.Ed.2d 212; *National Equip. Rental, Ltd. v. Fowler,* 2 Cir., 1961, 287 F.2d 43; *Tyrill v. Alcoa Steamship Co.,* 2 Cir., 1959, 266 F.2d 27; *Barber-Greene Co. v. Blaw-Knox Co.,* 6 Cir., 1957, 239 F.2d 774.

Emerson has not appealed Judge Nangle's denial of the injunction *per se.* B&D argues that the right to appeal the entire venue question, being only ancillary to denial of the injunction, is therefore lost. We disagree. Judge Nangle necessarily founded his injunction denial on its mootness in light of the decision to transfer. Emerson, in contesting the transfer, in effect contests the underlying basis for denial of the injunction. The entire order is therefore appealable.[7]

(2) *There was no personal jurisdiction over Limited*

Simpson-Sears, a Canadian company, agreed to purchase "Work Buddy" workbenches from Emerson for sale in Canada. It refused delivery after Limited gave notice that sale of the workbenches would infringe Limited's Canadian trademark

3. Emerson abandoned its appeal from the dismissal of Inventec and Hickman.

4. "The decision on choice of venue is ordinarily a matter within the district court's discretion, not to be overturned except on a very strong showing." *Codex Corp. v. Milgo Electronic Corp.,* 553 F.2d 735, 737, 194 USPQ 49, 50 (1st Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133, 195 USPQ 466 (1977).

5. § 1292. Interlocutory decisions

(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court . . . . .

6. Though Emerson's motion did not specify a permanent injunction, it was not the same as an unappealable motion to stay. An injunction is directed to the parties, whereas "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Company,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936).

7. We recognize that the device of filing for an injunction defeats the non-appealability of a transfer order. Until § 1292(a) is so amended as to eliminate injunctions relating to prosecution of lawsuits in transfer situations, however, appellate jurisdiction over an injunction order will, in view of case law, continue to enable counsel to carry the entire venue question up for review.

"Workmate."[8] Emerson relies on Missouri's long arm statute, Mo.Ann.Stat. § 506.-500 (Vernon),[9] arguing, for the first time on appeal, that Limited's actions in Canada constituted conscious harassment of Simpson-Sears, resulting in tortious interference with Emerson's business.

Acquisition of jurisdiction over Limited, by means of Missouri's long arm statute, requires that the harassment-interference cause of action against Limited be stated in the complaint. Mo.Ann.Stat. § 506.500.2. Emerson's complaint, however mentions neither Simpson-Sears nor its contract with Emerson.[10] The only causes of action alleged in the complaint relate to B&D's U.S. patents and trademark.[11] The long arm statute is therefore inapplicable.

On appeal, Emerson neither challenges Judge Nangle's findings relating to jurisdiction vis-a-vis Limited nor alleges any other basis for the asserted jurisdiction. Judge Nangle was correct in dismissing Limited for lack of jurisdiction.

(3) *Judge Nangle did not abuse his discretion in granting the motion to transfer*

■ Venue in a declaratory judgment action for patent invalidity and noninfringement is governed by the general venue statute, 28 U.S.C. § 1391(b) and (c),[12] not the patent infringement venue statute, 28 U.S.C. § 1400(b).[13] *General Tire & Rubber Company v. Watkins*, 326 F.2d 926, 929, 140 USPQ 101, 102 (4th Cir. 1964); *Metlon Corp. v. Dow Chemical Company*, 182

**8.** Emerson's briefs on appeal speak of the assertion of patent rights in relation to its Simpson-Sears argument. Emerson then says it "has learned from responses to interrogatories filed in the Maryland case that there are no Canadian patents corresponding to the patents on which [B&D] sued in . . . Maryland," and that the absence of corresponding Canadian patents "appears to be additional evidence as to the likely impropriety of the actions on the part of the Black & Decker 'companies.'" Emerson has not, however, contested B&D's statements in its brief and at oral argument that Limited's notice related only to its Canadian trademark rights. Emerson's treatment of the issue is inexplicable.

**9.** 506.500. Actions in which outstate service is authorized
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use, or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting.
2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which

jurisdiction over him is based upon this section. Laws 1967, p. 660, § 1.
Emerson relied only on element (1), *i. e.*, "doing business," before Judge Nangle. On appeal, Emerson relies only on element (3), *i. e.*, "a tortious act." Neither basis has merit.

**10.** Emerson mentioned Simpson-Sears and its contract with Emerson in later papers filed in the district court, but without relation to the court's jurisdiction.

**11.** That Simpson-Sears breached its contract is not *prima facie* indicative of conscious harassment by Limited. If Emerson's complaint had alleged the facts now argued, it would not have supported the view that a tortious act had been committed by Limited in Missouri.

**12.** § 1391. Venue generally
(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.
(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

**13.** § 1400. Patents and copyrights
(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

F.Supp. 546, 547–48, 124 USPQ 446, 447 (S.D.N.Y.1959); *DeLuxe Game Corp. v. Wonder Products Company,* 157 F.Supp. 696, 699–700, 116 USPQ 515, 518 (S.D.N.Y. 1957).

In one breath Emerson says it "does not quarrel" with the decisions holding that § 1391 governs. In the next, Emerson asserts that: (1) "[i]n the usual factual situation, the . . . declaratory judgment action, and . . . infringement action, could have been instituted by the respective parties under both 1400(b) and 1391 in either jurisdiction," (2) no authoritative case deals specifically with what it calls an "interface" of §§ 1400(b), 1404(a) and 1391, and (3) its declaratory judgment action cannot be transferred from Missouri, where it could be sued for infringement, to Maryland, where it could not.

Whatever may be the "usual factual situation," the relevance of Emerson's assertion (1) is at best obscure. In all events, the cases dealing with venue in declaratory judgment actions illustrate the non-identity of venue under §§ 1391 and 1400(b) in their holding that § 1391 governs.

■ Emerson's assertion (2), that no case has dealt with the question here presented, is without merit. In *Emerson Electric Company v. Robertshaw Controls Company,* 159 USPQ 33 (E.D.Mo.1968), Robertshaw sued Emerson (the present appellant) and two customers for infringement in California. Emerson retaliated with a declaratory judgment suit in Missouri. The Missouri district court transferred the suit to California, though Emerson had been dismissed from the infringement charge in California for improper venue. *Id.* at 33. In *Medtronic, Inc. v. American Optical Corp.,* 337 F.Supp. 490, 172 USPQ 429 (D.Minn.1971) the court transferred a declaratory judgment suit to Massachusetts, recognizing

that venue of an infringement suit under § 1400(b) would not there lie, pointing out that a declaratory judgment action is not the same as an infringement action, and holding venue of the former controlled by § 1391. That counterclaims for infringement were filed in *Robertshaw* and *Medtronic* had no effect on determination of the venue question. *DeLuxe Game Corp.* 157 F.Supp. at 699–701, 116 USPQ at 518–19, dealt specifically with §§ 1391 and 1400(b). The court there provided a detailed analysis in support of the view that Congress intended § 1400(b) to apply "only and specially to the specific species of patent litigation known as a patent infringement action," and not "to other classes of actions whose subject-matter may nevertheless involve or relate to patents." *Id.* at 700, 116 USPQ at 518. We find no flaw in that analysis and no basis for the view that a motion to transfer under § 1404(a) renders that analysis either inaccurate or inapplicable, or requires an adverse reflection on the courts' orders in *Robertshaw* and *Medtronic.*

■ Under its assertion (3), Emerson has continually, and disingenuously, protested that this action cannot be transferred to a jurisdiction where it could not have been sued in the first place, strenuously arguing that the transfer "forces" it to fight "a patent infringement action" in violation of the patent venue provisions.[14] Emerson's protest that it could not have been sued in Maryland is irrelevant, meritless, and potentially misleading. The action being transferred is one for declaratory judgment. Emerson is the plaintiff. The transfer order does not itself convert an action for declaratory judgment into an action for infringement. Nor does it convert a declaratory judgment plaintiff into an infringement defendant.[15] Venue in Maryland is

---

14. Emerson's argument that declaratory judgment and patent infringement actions can be "mirror images" of each other is irrelevant. Although the issues, validity and infringement, may be the same, the party on the defensive and the remedies sought against it are different.

15. That B&D has moved for consolidation of the declaratory judgment with the infringement action in Maryland is equally irrelevant, as is the absence of a counterclaim for infringement against Emerson in Missouri. Should the Maryland district court grant the motion and Emerson be charged with infringement, it could then move to dismiss for lack of venue.

governed by § 1391, as it was in Missouri. What counts under § 1391 is that the *defendant* here, B&D,[16] could have been sued in Maryland. Judge Nangle therefore had the power to order the transfer. *Hoffman v. Blaski*, 363 U.S. at 343–44, 80 S.Ct. 1084.

Emerson relies on *William Gluckin & Company v. International Playtex Corp.*, 407 F.2d 177, 160 USPQ 513 (2nd Cir. 1969) and *Codex Corp., supra*. In *Gluckin*, Playtex, a Georgia corporation with its principal place of business in New York, sued Woolworth, a New York corporation, in Georgia for infringement. Several of Playtex's manufacturing plants were located in Georgia, and Woolworth was selling the allegedly infringing goods in Georgia. Shortly after the filing of the Georgia action, Gluckin, a New York corporation and Woolworth's supplier, brought a declaratory judgment suit in New York against Playtex. The district court in New York enjoined further prosecution of the Georgia suit. The court on appeal affirmed the injunction on the basis of the district court's finding that the balance of convenience favored suit in New York:

> The general rule in this Circuit is that, as a principle of sound judicial administration, the first suit should have priority, "absent the showing of balance of convenience in favor of the second action," or unless there are special circumstances which justify giving priority to the second. . . . [One special circumstance] is the so-called "customer action" where the first-filed suit is against a customer of the alleged infringer while the second suit involves the infringer himself.
>
> [A second] is where forum shopping alone motivated the choice of the situs for the first suit.

407 F.2d at 178, 160 USPQ at 513–14 (citations omitted).

The court listed these factors as supporting priority for the second-filed suit: (1) Gluckin was really the primary party, (2) Gluckin sold its products to customers nationwide, (3) all the witnesses resided in and around New York, (4) the principal place of business of all the parties was New York, (5) many of Playtex's records were in New York. *Id.* at 179–80, 160 USPQ at 515.

In *Codex Corp.*, Milgo, a Florida corporation, sued Yellow Freight, a Kansas corporation, in Kansas for infringement. Promptly thereafter, Codex, a Massachusetts corporation and Yellow Freight's supplier, brought a declaratory judgment suit against Milgo in Massachusetts. The district court in Massachusetts denied Milgo's motion to transfer Codex's declaratory judgment suit to Kansas because suit could not have been brought in Kansas, and granted a stay of the Massachusetts suit.

■ The First Circuit, on appeal, described the "customer suit" exception as a rebuttable presumption:

> Venue rights . . . are important, particularly in patent litigation, *see Schnell v. Peter Eckrich & Sons, Inc.*, ante, 365 U.S. [260] at 262 n.4, 81 S.Ct. 557, [5 L.Ed.2d 546] where it is well known that the patent bar believes that the hospitality accorded patents varies markedly from circuit to circuit. With the advent of *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 1971, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 establishing, as to patentees, the one-strike-and-you're-out doctrine, forum shopping becomes peculiarly appealing.[17] In these circumstances, while we do not say that there should be an inflexible rule, we would recognize a rebuttable presumption that a manufacturer's de-

---

16. Emerson alleges that at the time this action was brought Limited could not have been sued in Maryland. Judge Nangle's dismissal of Limited for lack of personal jurisdiction removed that impediment to transfer. *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

17. Forum-shopping is a disease infecting both patentees and manufacturers of products accused of infringement. Where, as here, a manufacturer gains nationwide distribution of its product through sales to a retailer capable of rapid and repeated substitution of suppliers, it is not too much to expect that manufacturer to be called upon to defend an infringement suit filed anywhere in the distribution area.

claratory judgment action, in its home forum, at least if brought no later than promptly after a customer action, should take precedence over a mere customer action in a jurisdiction in which the manufacturer could not be sued.

553 F.2d at 738, 194 USPQ at 51 (footnotes omitted). It also noted certain factors to be considered in rebuttal:

There may be situations, due to the prospects of recovery of damages or other reasons, in which the patentee has a special interest in proceeding against a customer himself, rather than solely as a shadow of the manufacturer, and therefore less weight should be given to the manufacturer's forum. Nor do we mean to say that the balance of convenience might not indicate that the customer suit is in the more appropriate forum, but there is no present indication that this is such a case.

*Id.* at 738 n.6, 194 USPQ at 51 n.6.

In the course of reversing the stay order, the court discussed the matter of precedence among suits, adding two factors to those mentioned in *Gluckin:* (6) requiring Yellow Freight and Codex to litigate separately would have resulted in judicial duplication, (7) for Codex to take control of the suit in Kansas and be bound by res judicata would have forced Codex to litigate in a jurisdiction where it could not itself have been sued for infringement *or* have brought

a declaratory judgment action. 553 F.2d at 738, 194 USPQ at 51.

The controlling factors in *Gluckin* and *Codex Corp.* are not present here. First, the Hempe litigation, and Sears's prompt switch to Emerson thereafter, show that Sears would not be deterred from selling infringing workbenches by a judgment against its supplier. Thus, as Judge Nangle recognized, 460 F.Supp. at 1241, B&D has a special interest in proceeding against Sears as customer. *Codex Corp.*, 553 F.2d at 738 n.6, 194 USPQ at 51 n.6.

Second, the record is devoid of any indication that anyone other than Sears sells "Work Buddy" workbenches in this country.

Third, B&D's witnesses, records, etc., are in Maryland.

Fourth, neither B&D nor Sears are incorporated in, or have principle places of business in, Missouri.

Fifth, each jurisdiction is inconvenient to one of the parties, as Judge Nangle fully recognized. 460 F.Supp. at 1241. Further, that jurisdiction inconvenient to one of the parties is most convenient to the other. *Cf. Gluckin, supra* (New York, the site of the declaratory judgment action, was more convenient for all the parties, including the customer Woolworth).

Sixth, the record,[18] and counsel's response to questions at oral argument,[19] point to-

---

18. Count 1, paragraph 20 of Emerson's complaint says "Sears . . . did demand that . . . Emerson . . . defend . . . Sears . . . in connection with [the infringement action]."

   Internal memoranda of Emerson dated August 28 and 30 (Exhibits C and E attached to B&D's brief in opposition to the motion for injunction) indicate that Sears placed its defense "in the hands of Emerson," and that Emerson's "legal people" decided they wanted "to take over the lawsuit for Sears."

   Sears's brief in support of its motion to transfer in the Maryland suit states: "Inasmuch as Emerson has an indemnity agreement with Sears, it caused the filing of an Answer on behalf of Sears [in the Maryland suit] on October 2, 1978, and on that same date caused the filing of a 'Statement Under Local Rule 10A(b)' acknowledging that it was paying for the cost of defending this suit, and thus making it clear that it has a real interest in this litigation even

though it would not be bound by any injunction that might be issued against Sears."

19. Question: Before we begin, in your brief and here this morning you told us Emerson was only involved in indemnifying Sears. Now, of course, that word has a special meaning.
Counsel: Yes sir.
Question: What is the truth?
Counsel: Your Honor, the truth is that we are not controlling the litigation in Maryland. The truth is that counsel—
Question: Who is paying?
Counsel: As far as we know, Sears is—as far as we know that counsel in Washington, it's Cushman, Darby & Cushman, out of Washington, D.C.—Any action they take is cleared through Sears. Now certainly we converse and we know what's going on there. But we do not say "do this in that case," and they do it your Honor. It is cleared through Sears in

ward opposing conclusions on whether Emerson, which is paying the fiddler, is calling the defense tune in the Maryland suit.[20]

Seventh, this declaratory judgment action could have been brought in Maryland. *Cf. Codex Corp., supra.* (The declaratory judgment action could not have been brought in Kansas, the site of the infringement action.)

Where, as here, the factors of convenience are equally balanced and there exists a reasonable basis for the first-brought customer suit, no reason exists to refrain from application of normal rules of precedence among suits, or to refrain from transfer to a jurisdiction in which venue is proper under § 1391.

Finding no error, we affirm the order to dismiss Limited and to transfer the declaratory judgment suit to the district court for Maryland.

Chicago before they take any action, to my knowledge.

Question: What about the letters which appear and are attached to the brief?

Counsel: Yes sir, your Honor, it says indemnification and we are certainly—

Question: It says other things.

Counsel: We are certainly paying for the litigation, your Honor, but we are not doing anything else.

Question: Doesn't it say counsel of your choice?

Counsel: Your Honor, yes sir, I just said that. We did in fact pick out the counsel and then said will you clear this with Sears. And they have been corresponding, everything goes to Sears. We certainly converse and we certainly talk about the case, but we are not controlling the litigation. We do not say "do this or do that in that case."

Question: I understand that you have told us now that Sears is controlling this [Maryland] law suit. And Emerson's money will pay any judgment that comes out of it?

Counsel: Yes sir.

Question: Will you pay also if Sears decides to settle? Are they free to settle at will? And spend your money as they see fit?

Counsel: That's one of the problems with this particular thing. Your Honor, the relationship between—one of the problems with having Sears in that jurisdiction—The settlement, your Honor, if Emerson did not like it, Emerson would not approve the settlement. It would not agree to pay that settlement and there would be a dispute between Sears and Emerson. But that fact—

Question: [Inaudible.]

Counsel: Yes sir.

Question: Suppose Sears wants to put on five witnesses who admit infringement. It's Emerson's money. Are you going to let them do that?

Counsel: Your Honor, I don't have any control on that suit if they want to do that.

Question: Even though it's Emerson's money?

Counsel: Even though it's Emerson's money.

20. If Emerson does control the Maryland suit, the outcome will be binding on, or inure to the benefit of, Emerson under principles of res judicata. *Bros, Inc. v. W. E. Grace Manufacturing Company,* 261 F.2d 428, 430, 119 USPQ 401, 402 (5th Cir. 1958).