**DENTSPLY INTERNATIONAL, INC. and Dentsply Research and Development Corp., Plaintiffs,**

v.

**KERR MANUFACTURING COMPANY, Defendant.**

**CENTRIX, INC. and Dr. William B. Dragan, Plaintiffs,**

v.

**DENTSPLY INTERNATIONAL, INC., L.D. Caulk Division of Dentsply International, Inc., and Dentsply Research and Development Corp., Defendants.**

**Civ. A. Nos. 89–167–JJF, 89–507–JJF.**

United States District Court, D. Delaware.

April 3, 1990.

See also 732 F.Supp. 482.

Henry N. Herndon, Jr. of Morris James Hitchens & Williams, Wilmington, Del., Albert W. Preston, Jr. and Dianne B. Elderkin of Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, Pa., and Edward J. Hanson, Jr. of Dentsply Intern., Inc., York, Pa., for Dentsply.

Robert W. Whetzel of Richards Layton & Finger, Wilmington, Del., and William H. Levit, Jr., Michael B. Apfeld and John L. Beard of Godfrey & Kahn, S.C., Milwaukee, Wis., for Kerr Mfg.

Robert Jacobs of Jacobs & Crumplar, P.A., Wilmington, Del., and Arthur T. Fattibene, Southport, Conn., for Centrix and Dr. Dragan.

## OPINION

FARNAN, District Judge.

### I. FACTS

On April 7, 1989, Dentsply International, Inc. and Dentsply Research & Development Corp. ("Dentsply") filed suit against Sybron Corporation ("Sybron"), seeking relief for alleged trademark and patent infringement by Sybron of some of Dentsply's dental products. (D.I. 1). The Clerk of the Court assigned the case the designation of 89–167 ("89–167" or "Dentsply action"). Dentsply had intended to sue the licensee

of dental products manufactured by Centrix, Inc. ("Centrix"). Soon after the suit was filed, Dentsply discovered that Kerr Manufacturing Company ("Kerr") was the sole licensee of the Centrix dental products and stipulated to the dismissal of Sybron from the action. (D.I. 28). Dentsply amended its complaint to add Kerr as a defendant but did not change its allegations of patent and trademark infringement. (D.I. 23). Kerr, after additional amendments by Dentsply to its complaint, answered Dentsply's allegations by asserting through two counterclaims that Dentsply has no right to patent or trademark protection. (D.I. 26, 75). Consequently, the essential nature of 89–167 involves Dentsply's patent and trademark claims and Kerr's counterclaims on the same issues.

Five months after Dentsply filed suit, Centrix, the licensor and manufacturer of Kerr's dental products, instituted an action against Dentsply. In essence, Centrix restated as affirmative causes of action the counterclaims alleged by Kerr in 89–167. For example, Centrix alleged, *inter alia*, that the patents sued upon by Dentsply in 89–167 were unenforceable. Similarly, Centrix also claimed that Dentsply's dental products cannot be protected under trademark law. The Clerk of the Court assigned the suit the designation of "89–507" ("89–507" or "Centrix action"). By order dated December 14, 1989, the Court consolidated 89–167 and 89–507 for discovery purposes *only*. (D.I. 60). By separate order, the Court, after agreement of Dentsply and Kerr, assigned 89–167 the trial dates of June 5, 1990 through June 27, 1990. (D.I. 59). No trial date, however, has been set in 89–507.

On February 6, 1990, Kerr filed a motion in 89–167 requesting that the trademark claims in that action be severed and consolidated with the trademark claims in 89–507. (D.I. 80). It further requested that the patent claims in 89–507 be severed and consolidated with those in 89–167. Kerr's motion thus seeks to have two trials, with the first trial dedicated solely to patent issues and with second trial dedicated solely to trademark issues. Kerr's motion was soon followed by the motion of Centrix requesting a stay of the proceedings in 89–167 or, in the alternate, a partial severance and consolidation of the two actions as Kerr had requested in its prior filed motion. (D.I. 94). Dentsply opposed both motions. (D.I. 92, 103).

As a consequence of the two motions, the Court must answer the following questions:

(1) whether a stay in 89–167 is appropriate; and

(2) whether the trademark claims in 89–167 should be severed and consolidated with the trademark claims in 89–507 and whether the patent claims in 89–507 should be severed and consolidated with the patent claims in 89–167.

The Court will consider each question *seriatim*.

## II.  DISCUSSION

### A.  *Motion for Stay in 89–167*

■ "A United States district court has broad power to stay proceedings." *Bechtel Corp. v. Laborers' International Union*, 544 F.2d 1207, 1215 (3d Cir.1976). In exercising this discretion, the Court must weigh the competing interests of the parties and attempt to maintain an even balance. *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936). In maintaining that even balance, the Court must consider whether "there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir.1983) (quoting *Landis*, 299 U.S. at 255, 57 S.Ct. at 166). Any delay in the litigation of 89–167 will forestall the trial date agreed upon by Dentsply and Kerr and result in prejudice to Dentsply. Accordingly, Centrix must make a showing of " 'a clear case of hardship or inequity' " before the Court can enter a stay order. *Id.* at 1075–76 (quoting *Landis*, 299 U.S. at 255, 57 S.Ct. at 166).

■ In attempting to meet its burden of proof, Centrix offers several reasons which allegedly justify a stay. First, it claims that its need for adequate discovery war-

rants the stay. Second, it contends that any litigation in 89–167 may result in collateral estoppel of the issues in 89–507. Third, it asserts that judicial economy will result from a stay because piecemeal litigation will be avoided if a stay is entered. Fourth, it claims that patent law requires that Dentsply's suit against Centrix's "customer," Kerr, be stayed in favor of the action by Centrix, the manufacturer of the allegedly infringing dental products. The Court finds all these justifications unpersuasive and concludes, for the reasons stated below, that Centrix has not made the required showing of hardship or inequity.

First, Centrix has shown no justification for the five month delay between the filing of Dentsply's complaint and the filing of the Centrix action. The same concerns about discovery, piecemeal litigation and collateral estoppel which now motivate Centrix's motion to stay were present when Dentsply filed this suit approximately a year ago. The Court will not elevate Centrix's failure to address its concerns in a timely fashion to an example of hardship warranting a stay. Second, Centrix has shown no justification for waiting an additional five months after its filing of 89–507 in September 1989 to file its present motion. The failure of Centrix to act sooner suggests that Centrix will not suffer any hardship from the June 1990 trial date in 89–167.

Third, in its arguments concerning estoppel and piecemeal litigation, Centrix has failed to show how trying 89–507 first will avoid estoppel or piecemeal litigation. In essence, Centrix merely wants its later filed action to be tried first. Nevertheless, "[t]he disposition of the earlier case should not be delayed by the later filed litigation." *La Chemise Lacoste v. Alligator Company, Inc.*, 60 F.R.D. 164, 176 (D.Del.1973); *see also Sheetz v. Kares*, 534 F.Supp. 278, 279 (E.D.Pa.1982) (that an action may be duplicative of an earlier filed action does not require that the first action be stayed). Fourth, Centrix merely repackages its estoppel and piecemeal litigation argument when it asserts that in patent cases "[t]he weight of authority indicates that first filed 'customer actions' should be stayed in favor of a 'second filed' manufacturer's action." Centrix's Memorandum in Support of Motion to Stay, D.I. 95 at 4. Although Centrix's argument finds some support in case law, *see, e.g., William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir.1969); *ATSPI, Inc. v. Sharper Image, Inc.*, 677 F.Supp. 842, 843 (W.D.Pa.1988), the Court concludes on the facts present here that a stay is unwarranted.

The rule concerning "customer suits" upon which Centrix relies was first clearly articulated in *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421 (2d Cir.1965), *cert. dismissed*, 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966). In *Mattel*, the Second Circuit Court of Appeals noted that:

> Examples of situations which would justify a departure from the "first filed" rule of priority include: (a) the so-called "customer actions" where the first filed suit is against a customer of the alleged infringer while the second suit involves the infringer himself, ... and (b) cases where forum-shopping alone motivated the choice of situs for the first suit....

*Id.* at 424 n. 4 (citations omitted). In its motion for a stay, Centrix relies on the bare assertion that the exception to the first filed suit rule articulated by *Mattel* in example (a) is applicable to this case. Its motion, however, fails to point out that the "customer suit" exception is not an inflexible command that a second filed manufacturer's action be tried prior to a first filed action against a customer. *Kearns v. Wood Motors, Inc.*, 204 U.S.P.Q. 485, 493 (E.D.Mich.1978). In fact, rather than stating a *per se* rule, *Mattel*'s "customer suit" exception must be applied with due consideration of "both judicial economy and litigants' economy, as well as the entitlement of litigants to resolution of their claims." *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1082 (Fed.Cir.1989).

As the Fourth Circuit Court of Appeals has noted in describing the situations which would warrant *not* applying the "customer suit" exception:

> There may be situations, due to the prospects of recovery of damages or other

reasons in which the *patentee has a special interest in proceeding against a customer* himself, rather than solely as a shadow of the manufacturer, and therefore less weight should be given to the manufacturer's forum. Nor do we mean to say that the balance of convenience may not indicate that the customer suit is in the more appropriate forum....

*Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 736 n. 6 (4th Cir.) (emphasis added), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977). A patentee, such as Dentsply, has a "special interest" in proceeding against a customer when, such as in Kerr's case, the customer is the sole vendor of the product. *Emerson Electric Co. v. Black & Decker Manufacturing Co.*, 606 F.2d 234, 241 (8th Cir.1979); *see also Kahn*, 889 F.2d at 1081–82 (court concludes that trial court exceeded its discretionary authority in staying first filed customer suit in favor of second filed manufacturer's action). Furthermore, a rigid application of the "customer suit" rule in this case would give the Court's imprimatur to the delay of Centrix in bringing its "manufacturer's action."

Accordingly, the Court concludes that Centrix's reliance on the "customer suit" exception is misplaced. Consequently, the Court concludes that Centrix has failed to make a showing that a stay is warranted because of hardship or inequity. Therefore Centrix's motion to stay 89–167 is denied.

### B. *Motion for Partial Severance and Consolidation*

■ In order to accomplish the consolidation requested by Kerr and Centrix, the Court would be required to sever the patent claims in 89–507 and the trademark claims in 89–167. Fed.R.Civ.P. 42(b) controls the severance of claims. It provides:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Rule 42 leaves the decision to sever to the discretion of the trial judge. *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 604 F.Supp. 1485, 1491 (D.Del.1985). In using such discretion the court should examine "the potential for confusion, delay, prejudice or additional expense resulting from the grant or denial of the motion.... [and if there is] a large number of dissimilar or complex issues, if the trial of one issue is likely to be much shorter than the others or if a determination of the issues in the first trial may eliminate the need for a second trial." *Id.*

Kerr and Centrix contend that these factors militate in favor of severance. First, they argue that confusion will result in the jury if the trademark and patent issues are not separated. Second, they embellish this argument by contending that the issues involved in the patent and trademark claims are so dissimilar that the issues need to be tried separately. Finally, they contend that the first trial may collaterally estop litigation of the issues in 89–507. Dentsply disputes Kerr's arguments, pointing out that a severance will result in prejudicial delay in the litigation of their trademark claims and will result in inefficient litigation.

The Court concludes that the arguments of Kerr and Centrix are tenuous at best. First, Kerr's contentions that confusion will result unless severance is granted rings hollow. Kerr has already filed a motion for summary judgment in this case arguing that the undisputed facts supporting Dentsply's patent claims require summary judgment to be granted in Kerr's favor on Dentsply's trademark claims. Kerr's prior position on the overlapping nature of the evidence undermines its present argument about jury confusion. Furthermore, the Court is convinced that any severance and consolidation will not cure confusion but possibly cause confusion of its own. Any consolidation will require a realignment of the plaintiffs and

defendants. For example, if the Court were to grant Kerr and Centrix's request, Centrix would have to join Kerr as a defendant in 89–167. As this Court has noted, "[i]n such situations, it may not be reasonable to expect a jury to screen out, in its deliberations regarding one defendant, evidence it has been instructed to consider with respect to another defendant." *Clopay Corp. v. Newell Companies, Inc.*, 527 F.Supp. 733, 735 (D.Del.1981).

Secondly, although Kerr and Centrix's request, if granted, would result in the trademark claims being litigated together in one action and the patent claims being litigated together in another action, the similarity of issues in 89–167 and 89–507 does not demand severance and consolidation. As this Court has noted:

> [T]he mere existence of these common issues, although a prerequisite to consolidation, does not mandate a joint trial. The Court must balance the savings of time and effort gained from consolidation against the inconvenience, delay, or expense that might result from simultaneous disposition of the separate actions.

*Cedars–Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24, 32 (D.Del.1986). In this case, if the Court grants the severance and consolidation requested by Kerr and Centrix, a significant delay will result in the trial of the trademark claims and thus the Court concludes that prejudice would result from a severance and consolidation and that such prejudice outweighs any benefits that may be attained. Thirdly, the Court rejects Kerr and Centrix's estoppel argument. Centrix instituted 89–507 five months after Dentsply sued the sole licensee of its product; however, despite the ample time to join the Dentsply action, Centrix did not avail itself of the opportunity.

For these reasons, the Court concludes that there is a significant judicial economy to be achieved in allowing the claims to be tried in 89–167 in the unaltered fashion in which those claims were initially filed. The trial on the claims in 89–167 will allow a concise yet full presentation to the jury of the various issues without prejudice to either party's position. Therefore, Centrix's motion to stay the proceedings in 89–167 and the motions for partial severance and consolidation filed by Kerr and Centrix will be denied.

An appropriate Order will be entered.