Lynda MALONEY and Maria Rendina, Plaintiffs,

v.

Thomas P. GORDON and Sherry L. Freebery, both individually and in their official capacities, and New Castle County, a municipal corporation, Defendants.

No. CIV.A. 03–999–KAJ.

United States District Court, D. Delaware.

July 27, 2004.

Thomas S. Neuberger, Stephen J. Neuberger, The Neuberger Firm, P.A., Wilmington, DE, for Plaintiffs.

William W. Bowser, Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor, Albert H. Manwaring, IV, Pepper Hamilton LLP, James S. Green, Seitz, Van Ogtrop & Green, P.A., Wilmington, DE, for Defendants.

## MEMORANDUM ORDER

JORDAN, District Judge.

## I. INTRODUCTION

On June 2, 2004, I asked the parties to submit briefing on the issue of how to proceed with discovery in this case, given that I have before me parallel criminal and civil proceedings involving the same defendants. (Docket Item ["D.I."] 48.) The parties have fully briefed the issue (see D.I. 56, 59, 60), and it is now ripe for decision.[1]

## II. BACKGROUND [2]

On October 31, 2003, plaintiffs Lynda Maloney ("Maloney") and Maria Rendina ("Rendina") (collectively, "Plaintiffs") filed this civil rights action against their former employer, defendant New Castle County ("NCC"), and their immediate superiors, defendants Thomas P. Gordon [3] ("Gordon") and Sherry L. Freebery [4] ("Freebery"), in both their individual and official capacities. (D.I.1.) Generally, the complaint alleges that the Plaintiffs were retaliated against and constructively discharged because of their participation in a federal criminal investigation of "illegality and corruption" in the Defendants' administration of New Castle County. (See id.)

Prior to the events giving rise to this lawsuit, Maloney was an employee of NCC for 14 years, five years of which she spent

---

1. Defendants Thomas P. Gordon and Sherry L. Freebery, in their official capacities, and defendant New Castle County, take no position on the issues discussed herein. (D.I.55.) The term "Defendants," as used in this Memorandum Order, refers solely to Mr. Gordon and Ms. Freebery in their individual capacities.

2. This background information is drawn primarily from the Plaintiffs' complaint and does not reflect any finding of fact by the court.

3. Gordon is the County Executive of New Castle County ("NCC"). (D.I.1, ¶ 5.)

4. Freebery is the Chief Administrative Officer of NCC. (D.I.1, ¶ 6.)

as an Executive Assistant ("EA") to Freebery. (D.I.1, ¶ 8.) Rendina was "employed for pension purposes by NCC for 29 years" and she was an EA to Gordon for three years. (D.I.1, ¶ 9.) The Plaintiffs allege that, while serving as EAs, they observed the Defendants engaging in illegal activity, including assigning other EAs to "work on partisan political campaigns out of the Executive Offices of NCC, while on county time and while receiving salaries paid for by county taxpayers." (*Id.*, ¶ 12.) The Plaintiffs expressed their concerns about these activities to Gordon, who subsequently relayed them to Freebery. (*Id.*, ¶¶ 13–17.) However, according to the Plaintiffs, the Defendants continued using EAs to work on political campaigns. (*Id.*) The Plaintiffs then reported the Defendants' behavior to the United States Attorney's Office for the District of Delaware ("U.S.Attorney"), the Federal Bureau of Investigation ("FBI"), and the Internal Revenue Service ("IRS"). (*Id.*, ¶ 19.)

The Plaintiffs assert that they agreed to participate and assist in "an ongoing criminal investigation by the U.S. Attorney and the FBI by wearing hidden microphones or wires, compiling documents, and otherwise aiding in the collection of evidence of illegality and corruption by defendants." (*Id.*, ¶ 21.) The Plaintiffs were subpoenaed to testify before a federal grand jury on September 24, 2002, and notified the Defendants of such on October 2 and 3, 2002. (*Id.*, ¶¶ 23–24.) The Plaintiffs testified before a federal grand jury on October 9, 2002, regarding the Defendants and what they characterize as "issues of public concern under the First Amendment."[5] (*Id.*, ¶ 26.) The Plaintiffs allege that, from that time forward, the Defendants "deliberately set upon a course of conduct designed to retaliate against plaintiffs because of their speech and petition and to make their conditions of employment so intolerable that they would be forced to resign...."[6] (*Id.*, ¶ 32.) On August 4, 2003, the Plaintiffs resigned from their EA positions. (*Id.*, ¶ 90.)

On May 26, 2004, the Defendants were charged with racketeering, mail fraud, and wire fraud in an indictment in *United States v. Gordon et al.*, No. 04–CR–63–KAJ. The indictment alleges, among other things, that "[i]t was part of the manner and means of Defendants Thomas P. Gordon and Sherry L. Freebery...[t]o utilize and divert improperly and unlawfully [NCC] resources, including [NCC] equipment and the services of [NCC] employees, to promote and support the activities of political candidates of Gordon's and Freebery's choosing" ("the Election Scheme"). (*See* D.I. 1 in No. 04–CR–63–KAJ at 9; 11–16.) The Plaintiffs argue that the Election Scheme "is part of the same illegal conduct that [they] sought to address and expose when they went to and later aided in the federal government's criminal investigation...." (D.I. 59 at 8.)

After the Defendants were indicted, I requested briefing from the parties on how to proceed with this case now that there were criminal and civil proceedings before me involving the same parties. (*See* D.I. 48.) Gordon and Freebery request that I permit discovery in this case to proceed normally, deferring only that discovery addressed to them until after the criminal charges have been resolved. (D.I. 56 at 2.)

---

5. According to the Plaintiffs, these include "breach of the public trust, financial irregularities, improprieties, fraud and corruption by defendants Gordon and Freebery and the need to correct these abuses." (D.I.1, ¶ 26.)

6. The Plaintiffs' complaint sets forth, in detail, specific allegations concerning Gordon's and Freebery's conduct that the Plaintiffs say resulted in their constructive discharge. (*See* D.I. 1, ¶¶ 32–75.) However, those allegations are not pertinent to the issue to be decided, and need not be discussed herein.

The Plaintiffs, on the other hand, request a complete stay of these civil proceedings pending the outcome of the criminal case. (D.I. 59 at 2.) For the reasons set forth below, this case will be stayed pending the outcome of the criminal case.

## III. DISCUSSION

 "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (citations omitted); *see also Dentsply Int'l, Inc. v. Kerr Manufacturing Co.*, 734 F.Supp. 656, 658 (D.Del.1990) (citations omitted). In deciding whether to stay a civil case pending the resolution of a criminal case, courts consider many factors, including (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the inter-

ests of the court; and (6) the public interest. *In re Adelphia Communs. Secs. Litig.*, 2003 U.S. Dist. LEXIS 9736 at *7 (E.D.Pa. May 14, 2003); *Javier H. v. Garcia–Botello*, 218 F.R.D. 72, 74 (W.D.N.Y. 2003); *Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F.Supp.2d 523, 527 (D.N.J.1998).[7] I will address each of these factors in turn.

1. *The Extent to Which the Issues in the Civil and Criminal Cases Overlap*

 The similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay. *Walsh Securities*, 7 F.Supp.2d at 527. "The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil action involving the same matter." *Javier H.*, 218 F.R.D. at 75 (internal quotation marks and citations omitted).

This civil action shares a significant number of issues with the criminal case against the Defendants. The Plaintiffs testified before a federal grand jury regarding the Defendants' allegedly illegal conduct, and they claim that they were retaliated against and constructively dis-

---

**7.** Both parties apply these factors to the facts of this case, but they also acknowledge that this court has not yet had occasion to apply this six factor test when considering the issue of staying a civil case pending the outcome of a related criminal case. (*See* D.I. 56 at 14; D.I. 59 at 20.) However, the three factor test used by this court in determining whether a stay is appropriate overlaps significantly with and addresses the same concerns as these six factors. *See, e.g., Cognex Corp. v. Nat'l. Instruments Corp.*, 36828 at *1 (D.Del. June 29, 2001) (citing *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212, 217 (D.Del. 1991)) (when deciding whether to stay proceedings, courts are generally guided by such

factors as whether a stay would unduly prejudice or present a clear tactical advantage to the non-movant; whether a stay will simplify the issues raised by the parties; and whether discovery is complete and a trial date has been set). Therefore, I am satisfied that I would reach the same result—that is, staying these civil proceedings pending the outcome of the criminal case—under the general three factor test as I do under the more detailed test, especially since "the decision to grant or deny a stay is within the court's broad range of discretionary powers." *Dentsply Int'l, Inc. v. Kerr Manufacturing Co.*, 734 F.Supp. 656, 658 (D.Del.1990) (citations omitted).

charged from their jobs with NCC for cooperating in the federal investigation that led to the indictment against the Defendants. Thus, the Plaintiffs may, it seems, possess information pertaining to the U.S. Attorney's prosecution of the Defendants, especially regarding the alleged Election Scheme. Given these overlapping issues of fact, there is a risk of prejudice to the Defendants, as is more fully discussed below (*see infra* at pp. 6–7, 8–9), and there is a risk that the Defendants may use these civil proceedings "to gain premature access to evidence and information pertinent to the criminal case." *Javier H.*, 218 F.R.D. at 75 (citation omitted). This factor therefore weighs heavily in favor of granting a stay.

### 2. The Status of the Criminal Proceedings

"In determining whether to grant a stay, a court must also consider the status of the related criminal proceedings, which can have a substantial effect on the balancing of the equities." *In re Adelphia*, 2003 U.S. Dist. LEXIS 9736 at *9. If criminal indictments are returned against the civil defendants, then a court should strongly consider staying the civil proceedings until the related criminal proceedings are resolved. *Id.; see also Walsh Securities*, 7 F.Supp.2d at 527. Civil proceedings, if not deferred, can undermine a defendant's rights, including the privilege against self-incrimination under the Fifth Amendment of the United States Constitution. *Javier H.*, 218 F.R.D. at 75 (citation omitted).

In this case, indictments were returned against both Gordon and Freebery on May 26, 2004. The Defendants suggest that allowing discovery to proceed normally in this case, while staying discovery as it pertains to each of them individually, strikes the "perfect balance" in serving the interests of both parties. (D.I. 56 at 2, 23.) However, this approach raises more problems than it solves. If discovery were stayed only as to Gordon and Freebery, the Plaintiffs would not be able to adequately prepare for their civil case, as the Defendants are "key figures in both the civil and criminal cases." *In re Adelphia*, 2003 U.S. Dist. LEXIS 9736 at *14. Furthermore, because the civil and criminal issues are so closely intertwined, the Defendants may be put to the choice of invoking their Fifth Amendment rights sooner than they ought, if discovery in the civil case is allowed to proceed in any capacity, *see Javier H.*, 218 F.R.D. at 75 (citation omitted), and they also run the risk of exposing their criminal defense strategies to the government, *see In re Adelphia*, 2003 U.S. Dist. LEXIS 9736 at *14. Therefore, this factor also weighs strongly in favor of staying this case pending resolution of the related criminal proceedings.

### 3. The Plaintiffs' Interests in Expeditious Civil Proceedings Weighed Against the Prejudice to the Plaintiffs Caused by the Stay

Normally, "[i]n evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in her right to expeditiously pursue her claim." *In re Adelphia*, 2003 U.S. Dist. LEXIS 9736 at *10 (citation omitted). However, in this case, the Plaintiffs have "explicitly request[ed] that the court grant a stay of discovery pending disposition of the criminal matter." *Javier H.*, 218 F.R.D. at 75. Under such circumstances, and where the Plaintiffs make no assertion of prejudice (*see* D.I. 59 at 26–27), this factor weighs in favor of granting a stay.

### 4. The Burden on the Defendants

When determining whether or not to grant a stay, the court must analyze whether a stay would unduly prejudice or

present a clear tactical advantage to the non-movant, in this case, the Defendants. *See Cognex Corp.*, 2001 WL 34368283 at *1. Civil defendants subject to a criminal indictment must often choose between waiving their Fifth Amendment rights during civil discovery or asserting the privilege, to the detriment of their position in the civil case, *Walsh Securities*, 7 F.Supp.2d at 528, and potentially, to the detriment of their jury selection efforts in the criminal case.

The Defendants assert that "[w]hatever burden the Court might perceive is minimal and the individual defendants' are more than willing to bear it. . . . They want everything brought into light in both cases and as soon as possible[.]" (D.I. 56 at 20–21.) However, because they are now under criminal indictment in a case concerning nearly identical issues with respect to the alleged Election Scheme, and because the facts between the two cases overlap substantially, I hold that the risks to the fair resolution of the criminal case outweigh the benefits of expedition in the civil case. *See In re Adelphia*, 2003 U.S. Dist. LEXIS 9736 at *14; *Walsh Securities*, 7 F.Supp.2d at 528. "If discovery moves forward, each defendant will be faced with the difficult choice between asserting his or her right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the criminal case." *Javier H.*, 218 F.R.D. at 75 (if invoking the Fifth Amendment privilege imposes undue sanctions or penalties on a defendant, "a court may in its discretion stay proceedings, or postpone civil discovery") (citation omitted). Again, this factor weighs in favor of staying the civil proceedings.

### 5. The Interests of the Court

■ All district courts have an interest in efficiently managing their dockets. *In re Adelphia*, 2003 U.S. Dist LEXIS at *15 (citation omitted); *see also Cognex Corp.*, 2001 WL 34368283 at *1 (court must analyze whether a stay would simplify the issues raised by the parties). Staying this case is better for judicial efficiency. If the civil action is stayed until the conclusion of the criminal proceedings, then it obviates the need to make rulings regarding potential discovery disputes involving issues that may affect the criminal case. *Id.* (citing *Walsh Securities*, 7 F.Supp.2d at 528); *see also Javier H.*, 218 F.R.D. at 75 ("[B]y proceeding first with the criminal prosecution, the Court makes efficient use of judicial time and resources by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination.") (citation omitted). Furthermore, the outcome of the criminal proceedings may guide the parties in settlement discussions and potentially eliminate the need to litigate some or all of the issues in this case. *See id.* Thus, staying this case preserves judicial resources and may streamline other aspects of the civil case. As a result, this factor also weighs in favor of granting a stay.

### 6. The Public Interest

■ The "public has a substantial interest in the integrity or lack of integrity of those who serve them in public office." *U.S. v. Smith*, 776 F.2d 1104, 1114 (3d Cir.1985). "The public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant." *Javier H.* 218 F.R.D. at 75 (citations omitted). Here, there is no harm to the public interest in granting a stay of the civil case. *See Walsh Securities*, 7 F.Supp.2d at 529. Rather, a stay in this case would benefit the public by allowing the criminal prosecution of the Defendants, who are public officials, to proceed unimpeded and unobstructed by any concerns that may arise in discovery in the civil case. *See id.; see also Javier H.*, 218 F.R.D. at 75. Further-

more, while the public has a strong interest in this case, the related criminal proceeding serves to advance many of those same interests, especially given the factual overlap between the cases with respect to the alleged Election Scheme. *See In re Adelphia,* 2003 U.S. Dist. LEXIS at *16 (citations omitted). Therefore, this factor weighs in favor of granting a stay.

## IV. CONCLUSION

All of the factors listed above support staying this civil case pending resolution of the criminal proceedings. Accordingly, it is hereby ORDERED that all proceedings in this case are stayed until further order of this court.