KELLER, J., DISSENTING:
I strongly agree with Justice Wright that this matter is procedurally barred; however, in light of the majority's analysis on the the merits of this appeal, I feel obligated to address the merits and, specifically, the application of the factors in Lehmann v. Gibson , 482 S.W.3d 375 (Ky. 2016).
I agree that the Lehmann factors provide helpful guidance on the issue at hand, namely, whether Judge Maze's JCC proceedings should be stayed pending resolution of her criminal prosecution.[38] I disagree, *214 however, on the majority's application of those factors to the facts of this case.
The first factor noted in Lehmann is "the extent to which the evidentiary material in the civil and criminal cases overlap." Lehmann , 482 S.W.3d at 384 (quoting State v. Deal , 740 N.W.2d 755, 765 (Minn. 2007) ). Though Lehmann does not discuss this factor in detail, one of the federal cases it relies on, Maloney v. Gordon, 328 F. Supp. 2d 508 (D. Del. 2004) provides some insight. That Court noted that "[t]he similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay." Id. at 511 (citation omitted). The Maloney Court then explained, "The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil action involving the same matter." Id. (citation omitted).
In this case, the majority notes, "Unquestionably, the facts underlying the criminal prosecution appear to overlap with the facts underlying the misconduct charges against her in the JCC proceedings." Given the factual overlap in the two matters, the evidence will undoubtedly overlap, as well. As Maloney points out, these circumstances weigh heavily in favor of staying the JCC proceeding until the criminal matter has been resolved.
Lehmann next directs us to consider the status of the criminal proceeding. This factor should not be overlooked, as the status of the criminal case "can have a substantial effect on the balancing of the equities." Id. at 512 (citation omitted). In fact, Maloney noted that, "[i]f criminal indictments-are returned against the civil defendants, then a court should strongly consider staying the civil proceedings until the related criminal proceedings are resolved." Id. (citations omitted). This is true because "[c]ivil proceedings, if not deferred, can undermine a defendant's rights, including the privilege against self-incrimination under the Fifth Amendment of the United States Constitution." Id. (citation omitted).
Here, not only have criminal indictments been returned against Judge Maze, but her criminal trial has been scheduled for November of this year. A stay would therefore delay the JCC proceeding for only a few months. The brevity of this delay weighs in favor of entering the stay.
The third Lehmann factor, which is discussed in detail by the majority, is "the interests of the parties in staying the civil proceeding." Lehmann , 482 S.W.3d at 384 (quoting Deal, 740 N.W.2d at 765 ). I strongly agree that the JCC has an interest in maintaining the integrity of our judicial system by regulating the conduct of our judiciary, and I agree that the JCC has an interest in efficiently resolving those matters. However, keeping in mind the JCC's priorities, the Commission functions best when presented all relevant facts and arguments. Though we cannot predict if and when Judge Maze will invoke her Fifth Amendment right, the failure to stay the JCC proceeding necessarily means that she may soon be called to testify. If she does invoke her Fifth Amendment right to remain silent, the JCC will not have the benefit of considering Judge Maze's entire defense. Thus, the JCC's interest in regulating the conduct of the bench-not only efficiently but effectively-weighs in favor of a stay.
More importantly, the JCC's interests in resolving this matter do not outweigh *215 Judge Maze's interest in asserting her fundamental constitutional right against self-incrimination. This Fifth Amendment right is so fundamental that it was enshrined in our nation's Bill of Rights and in our Commonwealth's Constitution. It is a constitutionally guaranteed right and, undoubtedly, it should be afforded great weight. Given the importance of this interest, I cannot find that the JCC's interests in an expeditious proceeding outweigh this fundamental right. Even without considering the other interests identified by the majority (financial strain and overlapping of evidence), this interest alone is so strong that it is not outweighed by JCC's interests in a speedy administrative proceeding.
This analysis is not altered by Judge Maze's voluntary self-reporting letters or her television interview. The majority finds it "difficult to ascribe great weight" to Judge Maze's Fifth Amendment and overlapping-evidence arguments due to her earlier decision to make these statements. Essentially, then, the majority finds that Judge Maze's Fifth Amendment right against self-incrimination is weakened by her decision to self-report and be interviewed. I disagree. The statements at issue do not provide specific details of the alleged criminal charges of forgery and tampering with public records, nor do they contain admissions of guilt. Simply put, these are not self-incriminating statements. While they might provide a basis for impeachment during the JCC proceedings or at trial, they do not provide a basis for denying Judge Maze her fundamental right against self-incrimination.
Lehmann also directs us to consider any prejudice to the parties that may result from a stay. As I noted above, a stay would delay the JCC proceeding only until the resolution of the criminal trial, which is scheduled for November 12, 2019. There is no evidence that this short delay will lead to the loss of evidence or witnesses or will otherwise prejudice the JCC in any way. Judge Maze, on the other hand, will be greatly prejudiced by the absence of a stay because she will be forced to either invoke her Fifth Amendment right, thereby weakening her ability to tell her side of the story in her defense, or waive her Fifth Amendment right, in which case she risks making incriminating statements that can later be used against her at her criminal trial. As Maloney explained, competing civil and criminal proceedings force upon a defendant "the difficult choice between asserting his or her right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the criminal case." 328 F.Supp.2d at 513 (citation omitted). This is precisely the dilemma Judge Maze will face in the absence of a stay.
The fifth factor to consider is the interests of nonparties, which, in this particular case, overlaps with the final Lehmann factor, the public interest. Again, Maloney provides a persuasive explanation of these factors, particularly in cases involving the misconduct of public officials. That Court noted that "[t]he 'public has a substantial interest in the integrity or lack of integrity of those who serve them in public office.' " 328 F. Supp. 2d at 513 (quoting United States v. Smith , 776 F.2d 1104, 1114 (3d Cir. 1985) ). It clarified, however, that "[t]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant." Id. (quoting Javier H. v. Garcia-Botello , 218 F.R.D. 72, 75 (W.D.N.Y. 2003) ). In fact, in that case, a stay of the civil proceeding benefited the public "by allowing the criminal prosecution of the Defendants, who are public officials, to proceed unimpeded and unobstructed by any concerns that may arise in discovery in the civil case." "Furthermore," the Maloney Court explained, *216 "while the public has a strong interest in this case, the related criminal proceeding serves to advance many of those same interests, especially given the factual overlap between the cases." Id. at 513-14.
In the present case, the majority notes that the public interests in this case are both pragmatic and financial. Specifically, the public has an interest in seeing that routine court business is not disrupted, as well as ensuring that taxpayer dollars are not unnecessarily expended on Judge Maze's salary and the special judges hired to stand in her place during her suspension. I acknowledge that Judge Maze's suspension with pay imposes a hardship on the taxpayers overall and citizens of her circuit; however, the interest in protecting taxpayer dollars, while strong, does not outweigh the fundamental constitutional right against self-incrimination. This proposition is especially applicable here, where avenues exist to allow for Judge Maze's suspension without pay.
Lastly, I turn to the remaining Lehmann factor: court convenience. Essentially, this factor requires us to consider judicial economy and, more specifically, whether a stay will unfairly burden either the JCC or the trial court. Federal courts have found this factor to be "deserving of substantial weight." Microfinancial, Inc. v. Premier Holidays Int'l, Inc. , 385 F.3d 72, 79 (1st Cir. 2004). Here, Judge Maze does not ask for an indefinite stay of the JCC proceedings; she asks that it be stayed only until the criminal matter has resolved. That trial is scheduled for November of this year. Thus, while the JCC may have a heavy case load, a stay will delay this single proceeding by only a few months. Accordingly, I cannot find that the requested stay would overburden the JCC, nor can I see how it would inconvenience the trial court. This factor therefore weighs in favor of a stay.
Having carefully considered each of the Lehmann factors, I cannot agree with the majority's decision. These factors weigh in favor of a stay, and none more so than Judge Maze's interest in asserting a fundamental constitutional right. I have written separately not only to emphasize that factor, but because this issue reaches well beyond the parameters of this particular case. The Fifth Amendment belongs to all persons found within the United States of America and the Commonwealth of Kentucky. That right should not and cannot be diminished for judges or any other person that finds themselves under similar scrutiny as Judge Maze. Therefore, I dissent.
Lambert and Wright, JJ., join.

I understand that Lehmann and many of the cases it cites deal specifically with a stay of discovery in a civil proceeding, while this case involves the stay of the entire JCC proceeding; however, I agree with the majority that the factors it outlines are highly relevant and worthy of consideration.