RENDERED: JUNE 13, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000633-RR

BETH LEWIS MAZE,
CIRCUIT JUDGE                                                    MOVANT


V.                          IN THE SUPREME COURT


KENTUCKY JUDICIAL CONDUCT
COMMISSION                                                  RESPONDENT


## OPINION AND ORDER

Acting through an attorney, Judge Beth Lewis Maze[1] sent a letter to the Judicial Conduct Commission ("JCC") on November 12, 2017, in which she reported her own conduct. Based upon these facts, the JCC brought a five-count misconduct charge against her. While those misconduct charges were pending a final hearing before the JCC, a grand jury returned a criminal indictment against Judge Maze on November 1, 2018. The grand jury charged Judge Maze with two counts of second-degree forgery[2] and one count of tampering with public records.[3]

---

[1] Beth Lewis Maze is Judge of the 21st Judicial Circuit of Kentucky, Division No. 2.

[2] Kentucky Revised Statutes ("KRS") 516.030.

[3] KRS 519.060.

Two weeks after the return of the indictment, Judge Maze filed three motions in her JCC proceedings, and the JCC denied her requested relief on all of them. The JCC's denial of these motions is the subject of this appeal.

Before the JCC, Judge Maze first moved for a postponement of all further JCC proceedings until resolution of the criminal charges. Second, Judge Maze moved to postpone the December 3, 2018, JCC hearing, claiming insufficient time to prepare for the hearing because the JCC produced to her a voluminous amount of materials in discovery slightly less than a month before the scheduled JCC hearing. Third, Judge Maze asked for an informal conference with the JCC to address additional misconduct charges that were added after the initial charge.

After the denial of all three motions, Judge Maze filed in this Court a Kentucky Rules of Civil Procedure ("CR") 76.33 Motion for Intermediate Relief on November 28, 2018, asking us to stay the impending JCC hearing. And along with the CR 76.33 motion, Judge Maze filed a Notice of Appeal, in which she asked us to review the JCC's denial of her three motions. We granted Judge Maze's CR 76.33 motion, staying all JCC proceedings until we could address the merits of Judge Maze's appeal of the JCC's denial of her motions.

We find no error on the part of the JCC in denying Judge Maze's motion for a stay, and because her other challenges are either moot or procedurally infirm at this time, we affirm her appeal, in part, and order her appeal dismissed, in part.

2

# I. ANALYSIS.

Section 121 of the Kentucky Constitution creates a commission to retire for disability, suspend without pay, or remove for good cause members of the state's judiciary. And this section mandates that the "actions" of the commission are subject to judicial review by this Court.[4] But more importantly, Section 121 gives this Court the rulemaking power over the commission's proceedings. In exercise of this rulemaking power, this Court has promulgated Kentucky Supreme Court Rules ("SCR") 4.000, et seq. SCR 4.010(a) designates the name of the commission as the Kentucky Judicial Conduct Commission.

SCR 4.290 outlines judicial review of JCC proceedings. SCR 4.290(2) provides, "A notice of appeal of the Commission's *final order* shall be filed with the Clerk of the Supreme Court within 10 days after service of notice of the order upon the judge."[5] Additionally, SCR 4.290(5) provides, "The Court shall have power to affirm, modify or set aside in whole or in part the *order* of the Commission[.]"[6] As such, SCR 4.290 contemplates that only after the *final order* of the JCC resolving all issues does this Court exercise direct appellate review over JCC proceedings.

The language of SCR 4.290(1), which provides that the Kentucky Rules of Civil Procedure ("CR") shall apply to this Court's appellate review of JCC orders to the extent they are not inconsistent with SCR 4, further buttresses the point that we review only the final orders of the JCC. CR 54.01 provides, "A final or

---

[4] Ky. Const. § 121.

[5] (emphasis added).

[6] (emphasis added).

appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding[.]" "This Court has long held that appeals are allowed only from final judgments."[7]

The rules governing this Court's review of JCC proceedings only allow us to review the propriety of those proceedings upon submission of the JCC's final order resolving the proceedings.[8] Here though, the JCC proceedings are ongoing; nothing in Judge Maze's JCC proceedings has been finally adjudicated. And the three JCC rulings at issue in this direct appeal—denial of a stay, denial of a continuance, and denial of an additional informal hearing— are all interlocutory in nature and do not constitute immediately appealable final judgments.[9]

But the JCC only challenges the procedural ability of this Court to address the propriety of Judge Maze's argument regarding the JCC's denial of her motion for an additional informal hearing. The JCC argues that Judge Maze's challenge to the JCC's denial of her motion for an informal hearing is an impermissible issue for interlocutory review. The JCC is correct in this

---

[7] *Cavalier Homes of Alabama v. Coleman*, 181 S.W.3d 558, 559 (Ky. 2005) (citing CR 54.01; *National Gypsum Company v. Corns*, 736 S.W.2d 325 (Ky. 1987)).

[8] Indeed, a review of our case law reveals that we have only entertained appeals of JCC proceedings after the JCC has entered its final order disposing of the entire matter. *See e.g., Gormley v. Judicial Conduct Comm'n*, 332 S.W.3d 717, 720 (Ky. 2010); *Alred v. Com., Judicial Conduct Comm'n*, 395 S.W.3d 417, 423 (Ky. 2012); *Kentucky Judicial Conduct Comm'n v. Woods*, 25 S.W.3d 470, 471 (Ky. 2000).

[9] *See e.g.*, John Bourdeau, et al., *American Jurisprudence*, 4 Am. Jur. 2d Appellate Review § 146 (Feb. 2019 update) ("[A]n order granting or refusing a continuance, postponement, or adjournment of the trial or other proceeding involved in a state civil case is merely interlocutory in nature and nonappealable.") (internal citations omitted); *Warper Mfg. Co. v. Ashland Oil, Inc.*, 606 F. Supp. 866, 867–68 (N.D. Ohio 1985) (denial of plaintiff's motion to have hearing not final appealable order).

4

assertion, so we decline to review the propriety of the JCC's denial of Judge Maze's motion for an informal hearing.

Additionally, the JCC argues that this Court's grant of Judge Maze's CR 76.33 Motion for Intermediate Relief, which postponed the hearing scheduled for December 3, 2018, renders moot her challenge of the propriety of the JCC's denial of her motion to continue the December 3, 2018 hearing. The JCC is also correct in this assertion—this Court's granting of Judge Maze's CR 76.33 motion did, in fact, cancel the December 3, 2018 hearing.[10] So all that is left for our review is whether the JCC correctly denied Maze's motion for a stay.[11]

"The civil and regulatory laws of [government] frequently overlap with the criminal laws, creating the possibility of parallel civil and criminal proceedings, either successive or simultaneous."[12] In this case, Judge Maze's JCC proceedings and her criminal prosecution are pending at the same time. These parallel proceedings appear to involve the same conduct on the part of Judge Maze. Judge Maze sought by motion to halt the JCC proceedings until her criminal prosecution concludes, but the JCC denied the motion.

---

[10] "A 'moot case' is one which seeks to get a judgment . . . upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a *then* existing controversy." *Morgan v. Getter*, 441 S.W.3d 94, 98–99 (Ky. 2014) (quoting *Benton v. Clay*, 233 S.W. 1041, 1042 (Ky. 1921)) (emphasis in original).

[11] Although we have concerns about the procedural validity of Judge Maze's appeal of this interlocutory order, we will nonetheless address the merits of her argument because no procedural challenge was made by the JCC on this point.

[12] *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980) (internal citations omitted); *see also White Collar Crime*, 1 White Collar Crime § 7:1, Simultaneous or successive civil and criminal proceedings (July 2018 update) (internal citations omitted).

5

"In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence."[13] While "[t]he Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings[,] [n]evertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem . . . to require such action, sometimes at the request of the prosecution, . . . sometimes at the request of the defense[.]"[14] "The Court must make such determinations in the light of the particular circumstances of the case."[15]

A secondary source describes the benefits and drawbacks of parallel proceedings:

> Parallel proceedings benefit the government in several ways. . . . These proceedings allow civil and criminal agencies to share information. Furthermore, the regulatory agency can use the criminal conviction of the defendant to dispose of the civil action.
>
> Parallel proceedings can also benefit a defendant. The defendant may utilize a favorable outcome in the civil action to avoid criminal charges or to dismiss the criminal case. The defendant can use the liberal discovery rules of civil procedure to obtain information about the criminal case. However, parallel proceedings also pose problems for a defendant, such as invocation of his Fifth Amendment right against self-incrimination, the financial strain of defending two suits, and the use of evidence from the civil case in the criminal case.[16]

---

[13] *Dresser*, 628 F.2d at 1374.

[14] *Dresser*, 628 F.2d at 1374 (quoting *United States v. Kordel*, 397 U.S. 1, 12 (1970)).

[15] *Dresser*, 628 F.2d at 1374.

[16] *White Collar Crime, supra* note 12 (citations omitted).

The D.C. Circuit Court of Appeals in *Dresser* offered a compelling analysis for when a court should defer a noncriminal proceeding occurring simultaneously with a defendant's criminal proceeding:

> Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of [the Rules of Criminal Procedure], expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case. If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it. . . . In some . . . cases, however, the courts may adequately protect the government and the private party by merely deferring civil discovery or entering an appropriate protective order.[17]

"The burden is on the party seeking the stay to show 'pressing need for delay' and 'that neither the other party nor the public will suffer harm from entry of the order.'"[18] If a stay is granted, "[t]he stay must only be entered for a certain period of time and must not 'place [the] case in limbo for years.'"[19]

"While there is no precise test . . . for determining when a stay is appropriate, . . . courts commonly consider factors such as: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously

---

[17] *Dresser*, 628 F.2d at 1376 (citations omitted).

[18] *SEC v. Abdallah*, 313 F.R.D. 59, 64 (N.D. Ohio 2016) (quoting *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627–28 (6th Cir. 2014); *Ohio Envtl. Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)).

[19] *Abdallah*, 313 F.R.D. at 64 (quoting *Ohio Envtl. Council*, 565 F.2d at 396).

weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest."[20] "Moreover, the public interest in effective criminal prosecution generally outweighs any existing civil interests."[21] "In addition to those factors, . . . courts 'should consider "the extent to which the defendant's fifth amendment rights are implicated."'"[22] "The most important factor is the balance of the hardships, but '[t]he . . . court must also consider whether granting the stay will further the interest in economical use of judicial time and resources.'"[23]

This Court has recently addressed the issue of parallel proceedings and adopted a strikingly similar test for determining whether civil proceedings should be stayed pending resolution of concurrent criminal proceedings.[24] In *Lehmann*, the defendant was alleged to have sexually abused young children.[25] About a month after the defendant was criminally indicted, the alleged victims filed a civil suit against the defendant.[26] In determining whether the civil

---

[20] *Abdallah*, 313 F.R.D. at 64.

[21] *Id.*

[22] *E.M.A. Nationwide*, 767 F.3d at 627 (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995); *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)).

[23] *E.M.A. Nationwide*, 767 F.3d at 627 (internal citations omitted).

[24] *Lehmann v. Gibson*, 482 S.W.3d 375 (Ky. 2016). One of the dissents suggests that we rely on *Lehmann* to support our holding. To the contrary, we only cite *Lehmann* for its helpful articulation of the rule regarding the staying of a civil proceeding occurring simultaneously with a criminal proceeding.

[25] *Id.* at 379.

[26] *Id.*

proceedings should be stayed pending resolution of the criminal proceedings, this Court discussed the issue of parallel proceedings and how best to address it, using the following factors as "strong guidance: (1) the extent to which the evidentiary material in the civil and criminal cases overlap; (2) the status of the criminal proceeding; (3) the interests of any parties in staying the civil proceeding; (4) the prejudice to any parties from staying the civil proceeding; [(5)] the interests of persons that are not parties to the litigation; [(6)] court convenience; and [(7)] the public interest in the pending civil and criminal actions."[27]

Although we deal here with parallel JCC and criminal prosecution whereas *Lehmann* dealt with parallel civil and criminal prosecution, the distinction is immaterial for applying the *Lehmann* factors as a helpful guide in determining whether Judge Maze's JCC proceedings should be deferred until resolution of her criminal prosecution as she has requested. In view of the important constitutional function assigned to the JCC of ensuring public trust and confidence in the integrity of the state's court system, we additionally note that the JCC's process demands a high degree of deference.

We recognize from the outset that the burden is upon Judge Maze to prove that her circumstances require that the JCC proceedings against her be deferred during her criminal prosecution. Unquestionably, the facts underlying the criminal prosecution appear to overlap with the facts underlying the misconduct charges against her in the JCC proceedings. So far in the criminal

---

[27] *Id.* at 384 (citations omitted).

9

prosecution, Judge Maze has been indicted, arraigned on all charges, and pleaded not guilty. A pretrial conference is now set for September 17, 2019, and a trial date for November 12, 2019.

The JCC is the prosecuting party in the case before us. The JCC is the constitutionally created body solely responsible under state law for "the discipline, retirement or removal of justices of the Supreme Court and judges of the Court of Appeals, circuit court and district court under section 121 of the Constitution of Kentucky[.]"[28] "The purpose of Section 121 of our constitution is the regulation of the conduct of those persons charged with the administration of justice."[29] "The aim of [JCC] proceedings . . . is to improve the quality of justice administered within the Commonwealth by examining specific complaints of judicial misconduct, determining their relation to a judge's fitness for office and correcting any deficiencies found by taking the least severe action necessary to remedy the situation."[30]

As of now, Judge Maze has been on paid suspension from her duties as circuit judge since October 2, 2018.

The JCC's interests in proceeding without impediment include: (1) maintaining the integrity of the state's judicial system by the faithful discharge of its constitutional mandate to regulate the conduct of persons responsible for the administration of justice in this Commonwealth; and (2) disposing

---

[28] Supreme Court Rule ("SCR") 4.000.

[29] *Nicholson v. Judicial Ret. & Removal Comm'n*, 562 S.W.2d 306, 308 (Ky. 1978).

[30] *Id.*

10

expeditiously of all pending matters before the JCC within the time constraints imposed by SCR 4.000, et seq. The JCC's interests correspond with the public's interest in the prompt resolution of the misconduct charges against Judge Maze. The public's interest further demands: (1) minimizing disruption of routine court business to the citizens of the 21st Judicial Circuit and the Commonwealth; (2) reducing the additional expenditure of state funds for special judges deployed to the 21st Judicial Circuit to continue the work of the court while Judge Maze remains suspended; and (3) reducing length of time Judge Maze receives a full judicial salary and benefits while incapable of performing any judicial duties.

Judge Maze argues that she will suffer increased difficulties because of the parallel criminal charges and disciplinary charges: (1) the quandary of asserting her Fifth Amendment right against self-incrimination and defending herself fully in both proceedings; (2) the financial strain of defending two suits; and (3) the overlap of evidence from the disciplinary proceeding allowing its use in the criminal case and vice versa. These difficulties are no greater for Judge Maze than for any judge confronting parallel disciplinary and criminal charges. And any financial burden on Judge Maze does not appear to increase if the JCC proceedings proceed without further delay.

It is difficult to ascribe great weight to Judge Maze's Fifth-Amendment and overlapping-evidence arguments considering the numerous voluntary and arguably incriminating statements she made in two self-reporting letters to the JCC and the arguably incriminating statements she made in a TV interview in

11

August 2018. More importantly, we fail to see how Judge Maze's Fifth Amendment rights are even impinged upon in this case.

"The right against self-incrimination provides two types of protection in criminal proceedings: (1) a defendant cannot be compelled to testify, and (2) the factfinder cannot draw adverse inferences by the defendant's refusal to testify."[31] The JCC has not compelled Judge Maze to provide testimony in her defense that gives rise to statements that could be used against her, and even if it did, the trial court in her criminal proceeding could prevent any such compelled testimony from being used against her. Nor will the trial court in her criminal proceeding allow Judge's Maze's silence in her JCC proceedings to be used against her.

Understandably, Judge Maze wants to be able to defend herself in her JCC proceedings and prevent those statements from being used against her in any way in her criminal proceedings. "But the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.'"[32] "It is well settled that the government need not make the exercise of the Fifth Amendment privilege cost free."[33] "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course [s]he chooses, the Constitution does

---

[31] *Barker,* 379 S.W.3d at 124 (citing *Griffith v. California,* 380 U.S. 609 (1965)).

[32] *Jenkins v. Anderson,* 447 U.S. 231, 236 (1980) (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 30 (1973)).

[33] *McKune v. Lilfe,* 536 U.S. 24, 41 (2002) (Kennedy, J., dissenting) (citing *Jenkins,* 447 U.S. at 238; *Williams v. Florida,* 399 U.S. 78, 84–85 (1970)).

not by that token always forbid requiring h[er] to choose."[34] "It does no violence to the privilege that a person's choice to testify in h[er] own behalf may open the door to otherwise inadmissible evidence which is damaging to h[er] case."[35]

Judge Maze remains free to assert her Fifth Amendment right in both her JCC and criminal proceedings. Our decision today should not be taken to preclude her from doing so.

One of the dissents also suggests, "With the public fully protected, the JCC cannot constitutionally justify not awaiting the outcome of the criminal proceedings." If the JCC suspended Judge Maze *without* pay, then Justice Lambert's position would be strengthened. But with this statement, the dissent ignores the fact that the longer the JCC proceedings are stayed, the more taxpayer dollars will be paid to a non-working judge and the temporary judges who must fill her role.

One of the dissents additionally relies on this Court's decision in *Cornett v. Judicial Ret. & Removal Comm'n*[36] to support its argument that a stay on Judge Maze's JCC proceedings is warranted. But this Court's disposition in that case is the exact opposite disposition that the dissent advocates for: "The order of the Commission is reversed, and the cause remanded to the Commission so that it can either await the outcome of the federal appellate process *or conduct an independent hearing and make its own findings of*

---

[34] *McGautha v. California*, 402 U.S. 183, 213 (1971) (vacated on other grounds by *Crampton v. Ohio*, 408 U.S. 941 (1972)).

[35] *Id.* (citing *Spencer v. Texas*, 385 U.S. 554, 561 n.7 (1967); *Michelson v. United States*, 335 U.S. 469 (1948)).

[36] 625 S.W.2d 564 (Ky. 1981).

13

*culpability and enter an appropriate order based on them.*"[37] In other words, faced with this exact situation in *Cornett*, this Court allowed the JCC to proceed with its investigation and disposition.

In sum, the balance of equities in this case favors allowing the JCC to move ahead with its disciplinary proceedings. The overarching public interest in an expedited resolution of disciplinary proceedings against a sitting judge furthers the goal of maintaining the public's trust and confidence in the judiciary while, at the same time, minimizing expense and inconvenience to the public. These interests outweigh the burden of parallel proceedings suffered by Judge Maze. Upon full review of the record, we hold that the JCC did not err in denying Maze's motion for a stay.

Accordingly, the Court ORDERS:

1. The JCC's denial of Judge Maze's Motion to Stay is AFFIRMED.

2. Judge Maze's challenge to the JCC's denial of Judge Maze's Motion for a Continuance is DISMISSED as MOOT.

3. Judge Maze's challenge to the JCC's denial of Judge Maze's Motion for an Informal Hearing is DISMISSED.

All sitting. Minton, C.J.; Buckingham, Hughes, and VanMeter, JJ., concur. Keller, J. dissents by separate opinion which Lambert and Wright, JJ. join. Lambert, J., dissents by separate opinion, which Keller and Wright, JJ., join. Wright, J., dissents by separate opinion which Keller and Lambert, JJ., join.

---

[37] *Id.* at 569 (emphasis added).

KELLER, J., DISSENTING: I strongly agree with Justice Wright that this matter is procedurally barred; however, in light of the majority's analysis on the the merits of this appeal, I feel obligated to address the merits and, specifically, the application of the factors in *Lehmann v. Gibson*, 482 S.W.3d 375 (Ky. 2016).

I agree that the *Lehmann* factors provide helpful guidance on the issue at hand, namely, whether Judge Maze's JCC proceedings should be stayed pending resolution of her criminal prosecution.[38] I disagree, however, on the majority's application of those factors to the facts of this case.

The first factor noted in *Lehmann* is "the extent to which the evidentiary material in the civil and criminal cases overlap." *Lehmann*, 482 S.W.3d at 384 (quoting *State v. Deal*, 740 N.W.2d 755, 765 (Minn. 2007)). Though *Lehmann* does not discuss this factor in detail, one of the federal cases it relies on, *Maloney v. Gordon*, 328 F. Supp. 2d 508 (D. Del. 2004) provides some insight. That Court noted that "[t]he similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay." *Id.* at 511 (citation omitted). The *Maloney* Court then explained, "The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil action involving the same matter." *Id.* (citation omitted).

---

[38] I understand that *Lehmann* and many of the cases it cites deal specifically with a stay of discovery in a civil proceeding, while this case involves the stay of the entire JCC proceeding; however, I agree with the majority that the factors it outlines are highly relevant and worthy of consideration.

In this case, the majority notes, "Unquestionably, the facts underlying the criminal prosecution appear to overlap with the facts underlying the misconduct charges against her in the JCC proceedings." Given the factual overlap in the two matters, the evidence will undoubtedly overlap, as well. As *Maloney* points out, these circumstances weigh heavily in favor of staying the JCC proceeding until the criminal matter has been resolved.

*Lehmann* next directs us to consider the status of the criminal proceeding. This factor should not be overlooked, as the status of the criminal case "can have a substantial effect on the balancing of the equities." *Id.* at 512 (citation omitted). In fact, *Maloney* noted that, "[i]f criminal indictments are returned against the civil defendants, then a court should strongly consider staying the civil proceedings until the related criminal proceedings are resolved." *Id.* (citations omitted). This is true because "[c]ivil proceedings, if not deferred, can undermine a defendant's rights, including the privilege against self-incrimination under the Fifth Amendment of the United States Constitution." *Id.* (citation omitted).

Here, not only have criminal indictments been returned against Judge Maze, but her criminal trial has been scheduled for November of this year. A stay would therefore delay the JCC proceeding for only a few months. The brevity of this delay weighs in favor of entering the stay.

The third *Lehmann* factor, which is discussed in detail by the majority, is "the interests of the parties in staying the civil proceeding." *Lehmann*, 482 S.W.3d at 384 (quoting *Deal*, 740 N.W.2d at 765). I strongly agree that the JCC has an interest in maintaining the integrity of our judicial system by regulating

16

the conduct of our judiciary, and I agree that the JCC has an interest in efficiently resolving those matters. However, keeping in mind the JCC's priorities, the Commission functions best when presented all relevant facts and arguments. Though we cannot predict if and when Judge Maze will invoke her Fifth Amendment right, the failure to stay the JCC proceeding necessarily means that she may soon be called to testify. If she does invoke her Fifth Amendment right to remain silent, the JCC will not have the benefit of considering Judge Maze's entire defense. Thus, the JCC's interest in regulating the conduct of the bench—not only efficiently but effectively—weighs in *favor* of a stay.

More importantly, the JCC's interests in resolving this matter do not outweigh Judge Maze's interest in asserting her fundamental constitutional right against self-incrimination. This Fifth Amendment right is so fundamental that it was enshrined in our nation's Bill of Rights and in our Commonwealth's Constitution. It is a constitutionally guaranteed right and, undoubtedly, it should be afforded great weight. Given the importance of this interest, I cannot find that the JCC's interests in an expeditious proceeding outweigh this fundamental right. Even without considering the other interests identified by the majority (financial strain and overlapping of evidence), this interest alone is so strong that it is not outweighed by JCC's interests in a speedy administrative proceeding.

This analysis is not altered by Judge Maze's voluntary self-reporting letters or her television interview. The majority finds it "difficult to ascribe great weight" to Judge Maze's Fifth Amendment and overlapping-evidence arguments due to

17

her earlier decision to make these statements. Essentially, then, the majority finds that Judge Maze's Fifth Amendment right against self-incrimination is weakened by her decision to self-report and be interviewed. I disagree. The statements at issue do not provide specific details of the alleged criminal charges of forgery and tampering with public records, nor do they contain admissions of guilt. Simply put, these are not self-incriminating statements. While they might provide a basis for impeachment during the JCC proceedings or at trial, they do not provide a basis for denying Judge Maze her fundamental right against self-incrimination.

*Lehmann* also directs us to consider any prejudice to the parties that may result from a stay. As I noted above, a stay would delay the JCC proceeding only until the resolution of the criminal trial, which is scheduled for November 12, 2019. There is no evidence that this short delay will lead to the loss of evidence or witnesses or will otherwise prejudice the JCC in any way. Judge Maze, on the other hand, will be greatly prejudiced by the absence of a stay because she will be forced to either invoke her Fifth Amendment right, thereby weakening her ability to tell her side of the story in her defense, or waive her Fifth Amendment right, in which case she risks making incriminating statements that can later be used against her at her criminal trial. As *Maloney* explained, competing civil and criminal proceedings force upon a defendant "the difficult choice between asserting his or her right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the criminal

18

case." 328 F. Supp. 2d at 513 (citation omitted). This is precisely the dilemma Judge Maze will face in the absence of a stay.

The fifth factor to consider is the interests of nonparties, which, in this particular case, overlaps with the final *Lehmann* factor, the public interest. Again, *Maloney* provides a persuasive explanation of these factors, particularly in cases involving the misconduct of public officials. That Court noted that "[t]he 'public has a substantial interest in the integrity or lack of integrity of those who serve them in public office.'" 328 F. Supp. 2d at 513 (quoting *United States v. Smith*, 776 F.2d 1104, 1114 (3d Cir. 1985)). It clarified, however, that "[t]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant." *Id.* (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)). In fact, in that case, a stay of the civil proceeding *benefited* the public "by allowing the criminal prosecution of the Defendants, who are public officials, to proceed unimpeded and unobstructed by any concerns that may arise in discovery in the civil case." "Furthermore," the *Maloney* Court explained, "while the public has a strong interest in this case, the related criminal proceeding serves to advance many of those same interests, especially given the factual overlap between the cases." *Id.* at 513–14.

In the present case, the majority notes that the public interests in this case are both pragmatic and financial. Specifically, the public has an interest in seeing that routine court business is not disrupted, as well as ensuring that taxpayer dollars are not unnecessarily expended on Judge Maze's salary and the special judges hired to stand in her place during her suspension. I acknowledge

19

that Judge Maze's suspension with pay imposes a hardship on the taxpayers overall and citizens of her circuit; however, the interest in protecting taxpayer dollars, while strong, does not outweigh the fundamental constitutional right against self-incrimination. This proposition is especially applicable here, where avenues exist to allow for Judge Maze's suspension *without* pay.

Lastly, I turn to the remaining *Lehmann* factor: court convenience. Essentially, this factor requires us to consider judicial economy and, more specifically, whether a stay will unfairly burden either the JCC or the trial court. Federal courts have found this factor to be "deserving of substantial weight." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 79 (1st Cir. 2004). Here, Judge Maze does not ask for an indefinite stay of the JCC proceedings; she asks that it be stayed only until the criminal matter has resolved. That trial is scheduled for November of this year. Thus, while the JCC may have a heavy case load, a stay will delay this single proceeding by only a few months. Accordingly, I cannot find that the requested stay would overburden the JCC, nor can I see how it would inconvenience the trial court. This factor therefore weighs in favor of a stay.

Having carefully considered each of the *Lehmann* factors, I cannot agree with the majority's decision. These factors weigh in favor of a stay, and none more so than Judge Maze's interest in asserting a fundamental constitutional right. I have written separately not only to emphasize that factor, but because this issue reaches well beyond the parameters of this particular case. The Fifth Amendment belongs to all persons found within the United States of America

and the Commonwealth of Kentucky. That right should not and cannot be diminished for judges or any other person that finds themselves under similar scrutiny as Judge Maze. Therefore, I dissent.

Lambert and Wright, JJ., join.

LAMBERT, J., DISSENTING: Although I join Justice Wright's dissent regarding the necessity to file a writ to invoke our jurisdiction to hear this case, because the Majority has chosen to address the merits, I feel compelled to address them as well and respectfully dissent. I would hold that the Fifth Amendment protections afforded Judge Maze in her parallel criminal proceeding would stay the Judicial Conduct Commission (JCC) proceedings pending the outcome of her criminal charges, which are also part of the JCC complaint. Because of her fundamental constitutional rights against self-incrimination in her criminal trial, the procedures of the JCC must face a strict scrutiny test under *Carey v. Wolnitzek.*[39] and *Republican Party of Minnesota v. White.*[40] Because the public and the judiciary are fully protected by the temporary measures taken by the JCC and the Chief Justice, there is no compelling state interest, thus the stay pending her criminal case should be granted.

I am persuaded by the analysis of *Cornett v. Judicial Ret. and Removal Comm'n.*[41] In *Cornett*, District Judge Cornett had been convicted in the United

---

[39] 614 F.3d 189 (2010).

[40] 536 U.S. 765 (2002).

[41] 625 S.W.2d 564 (Ky. 1982).

States District Court for the Eastern District of Kentucky of two felony offenses. *Id.* Judge Cornett timely filed an appeal to the United States Court of Appeals for the Sixth Circuit. *Id.* After Judge Cornett had been indicted and prior to his conviction, the Chief Justice signed an order appointing a special presiding judge in the place and stead of Judge Cornett.[42] *Id.* at 565. Meanwhile, the JCC commenced an investigation under SCR[43] 4.170 based on his indictment. *Id.* Proper notice of that investigation and an opportunity for Judge Cornett to be informally heard was given prior to his criminal trial. *Id.* Judge Cornett did not appear at the informal conference. *Id.* No further action was taken by the JCC until after he was convicted. *Id.* The JCC then scheduled another opportunity for Judge Cornett to appear informally with counsel, but the Judge did not appear. *Id.* On the scheduled date, the JCC entered an order suspending Judge Cornett based on his conviction in the United States District Court on two counts of conspiracy and bribery. *Id.* at 565-66. A formal hearing was scheduled thereafter. *Id.* at 566.

Judge Cornett attended that hearing in person without counsel and implored the JCC to defer a decision on the charges made against him until after the criminal proceedings in federal court had been fully and completely

---

[42] The Majority states that Judge Maze is "faced with this exact situation in *Cornett*". However, that is not the case. Judge Cornett, who had also been suspended WITH pay pending his criminal case, had already been convicted of his charges, before the JCC attempted to permanently remove him from office.

[43] Kentucky Supreme Court Rule.

litigated. *Id.* The JCC refused to do so and issued an order removing him from office. *Id.* Judge Cornett appealed to the Kentucky Supreme Court. *Id.*

Citing *Hazelrigg v. Douglass*[44]—where three members of the Fiscal Court of Montgomery County, Kentucky were convicted of malfeasance in office and fined, then their offices forfeited and declared vacant—the *Cornett* court discussed the status of a public official who had been found guilty of a serious offense:

> It is suggested that when a public official has been indicted and found guilty of a grave offense, and judgment has been pronounced depriving him of the office in the conduct of which he committed the malfeasance, he ought not thereafter to be allowed by suspending the judgment to discharge the duties of the office during an appeal; thereby defeating the course of the law that took from him the office he had disgraced. A sufficient answer to this is that, in the administration of justice, under our procedure, no judgment of an inferior tribunal can be deemed to finally adjudge the rights of the parties when the person against whom it is entered prosecutes within the time and in the manner allowed by law an appeal to a court having jurisdiction to revise it. Neither public policy nor the ends of justice would be promoted by denying to a public official the right to test the validity of a judgment against him; and it is difficult to understand upon what principle it can be maintained that such officer may appeal from so much of the judgment as imposes a trifling fine, fully protecting his rights by the execution of a bond, and yet be denied the more important right to save his office until the judgment of the lower court can be reviewed.
> We further said:
> Again, it would be giving to the convicted officer very inadequate relief to say that he might appeal from the judgment vacating his office, and yet be deprived of the

---

[44] 104 S.W. 755 (Ky. 1907).

23

office by the judgment of the inferior court, although that judgment might be reversed and entirely set aside by the judgment of the appellate court....

*Cornett*, 625 S.W.2d at 567. This Court went on to reason:

In the instant proceeding, Judge Cornett has implored the Commission to await the final outcome of the criminal proceedings against him in the federal courts. Would granting Judge Cornett's request in any way interfere with the best interest of justice to be served? Judge Cornett has been suspended from the practice of law as an attorney. He cannot therefore practice law. On January 10, 1980, the Chief Justice of this court entered an order authorizing the regular judge of the Harlan Circuit Court assigned temporarily as special presiding judge of the District Court for the 26th Judicial District, with full and exclusive authority and responsibility to conduct all proceedings now and hereafter pending in that court. Judge Cornett was ordered to release to the said circuit judge all of the records and physical facilities of the district court. Consequently, for all intent and purposes Judge Cornett cannot sit as the District Judge for the 26th Judicial District. Not being able to practice law or to hold court, it can hardly be in the best interest of justice that Judge Cornett's request that the Commission withhold the entry of an order removing him from office be denied. Judge Cornett's appeal to the United States Court of Appeals is still pending. Consequently, there is no "conviction" which could at this time form the basis for the entry of an order removing him from office.

*Id.* at 568-69. Clearly, the JCC waited until *after* Judge Cornett was convicted in his criminal trial before it acted to permanently remove him from his seat. Judge Cornett's criminal trial took place in 1980 and he was temporarily removed with pay. But the JCC did not proceed with its hearing against Judge Cornett until 1981, again, *after* his criminal trial was over. Judge Maze should be entitled to the same treatment.

24

In the same vein, in *Nicholson v. Judicial Ret. & Removal Comm'n*, we noted that:

> The purpose of Section 121 of our constitution is the regulation of the conduct of those persons charged with the administration of justice. The aim of proceedings instituted pursuant to this section is to improve the quality of justice administered within the Commonwealth by examining specific complaints of judicial misconduct, determining their relation to a judge's fitness for office and correcting any deficiencies found by taking the least severe action necessary to remedy the situation. **The target is not punishment of the judge.** Consequently, the action of the Commission does not constitute a violation of the "ex post facto" prohibitions of the federal and state constitutions.[45]

The majority seems to give much weight to the fact that Judge Maze has made "numerous voluntary and arguably incriminating statements" in both her self-reporting letters to the JCC and in a television interview. But there may be some conflation of the concepts of forgery of signatures versus completing an order with notation for clerical distribution, and Judge Maze has not admitted any bad faith in what transpired.

Her criminal charges, which overlap the JCC charges, are two counts of Second-Degree Forgery and one count of Tampering with Public Records. These charges are the result of her signing two orders for a drug test on her ex-husband for two different hospitals. Specifically, that on the first order she wrote "Bath Co. Attorney" on the "Attorney for the Plaintiff" (Form AOC-006-3,

---

[45] 562 S.W.2d 306, 308 (Ky. 1978) (emphasis added) (citing *Flemming v. Nestor*, 363 U.S. 603 (1960); *DeVeau v. Braisted*, 363 U.S. 144 (1960); *Ex parte Garland*, 71 U.S. 333 (1866); and *Cummings v. Missouri*, 71 U.S. 277 (1866)).

25

Rev. 6-88) line, which would have indicated that the Bath Co. attorney had seen the order and agreed to its contents. On the second order, (same vintage) she wrote "Commonwealth Att. & Bath Co. Attorney" on the "Attorney for the Plaintiff" signature line. We now know that neither the Commonwealth's attorney nor the Bath County attorney saw or agreed to the orders.

However, while Judge Maze fully admits to signing these documents and making the notations in the lower left segment of the single page form order, she explained in her answer to the JCC's counts that she inadvertently completed those orders in the same way she had completed other orders which were on the more recent adaptations of a different AOC form order she typically uses. Specifically, that she thought the form she signed (AOC-006-3) was the same as the AOC forms she had previously used (AOC-103-1) in that the portion to be signed was a "Distribution." The "Distribution" portion on the AOC-103-1 form simply tells the Circuit Clerk who the order should be mailed to, when entered. While the "Seen by and order of entry waived" portion of the AOC-006-3 form which she completed is meant to signify that whoever's signature is on that line has seen and agreed to the contents of the order. These sections are both in the bottom left-hand corner of the forms, and Judge Maze asserts that she "did not realize the wording on the bottom of the [AOC-006-3] order was different."

Second-Degree Forgery and Tampering with Public Records are intent crimes. A person is guilty of Second-Degree Forgery when "**with intent** to defraud, deceive or injure another, he falsely makes, completes or alters a

written instrument[.]"[46] The Crime of Tampering with Public Records is committed when a person: (1) **knowingly** makes a false entry in or falsely alters any public record; or (2) **knowing** he or she lacks the authority to do so, **intentionally** destroys, mutilates, conceals, removes, or otherwise impairs the availability of any public records; or (3) **knowing** he or she lacks the authority to retain it, **intentionally** refuses to deliver up a public record in his or her possession upon proper request of a public servant lawfully entitled to receive such record for examination or other purposes.[47]

It is of course not within our province to determine the credibility of Judge Maze's explanation. That is the job of a fact-finder. **But if the jury empaneled for her criminal trial credits her defense** she could potentially be acquitted of her criminal charges because she asserts she lacked the intent required to commit those crimes. Therefore, respectfully, the great weight that the Majority seems to place on her allegedly incriminating statements which might make the case indefensible is not well founded upon closer review.

I also respectfully disagree with the weight given to the public interest in "reducing the length of additional time Judge Maze receives her full judicial salary while incapable of performing her judicial duties." The interests of the public are fully protected during this time through her temporary suspension

---

[46] Kentucky Revised Statute (KRS) 616.030 (emphasis added).
[47] KRS 519.060 (emphasis added).

and with coverage of her duties by special judges. As the *Nicholson*[48] court noted, "The target is not the punishment of the Judge."

Should Judge Maze be found guilty of misconduct under the JCC proceedings, she is subject to discipline which could potentially remove her from the office to which she was elected. Her office would be declared vacant and a special election would be held to fill the remainder of her term which ends January 9, 2023.

The right to choose or pursue an occupation has been held to be a substantial right and is protected by the due process and equal protection clause of the Fourteenth Amendment and subject to a rational basis test. In *Bruner v. Zawaki*[49], the Federal District Court said:

> Under the due process clause of the Fourteenth Amendment, the state may not deprive a citizen of life, liberty, or property without due process of law. *See* U.S. Const. Amend. XIV § 1. "The touchstone of due process is protection of the individual against arbitrary action of the government." *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The Fourteenth Amendment "prohibits the government from imposing impermissible substantive restrictions on individual liberty," including the liberty interest to pursue a chosen occupation. *Craigmiles v. Giles,* 110 F.Supp.2d 658, 661 (2000), *citing Washington v. Glucksberg,* 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *Conn v. Gabbert,* 526 U.S. 286, 291–92, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). Such a liberty interest is subject to reasonable regulation by the state, and the "burden is on the challenger to show that there is no rational connection between the enactment and a legitimate government interest." *Am. Express Travel Related Servs. Co. v. Ky.,* 641 F.3d 685,

---

[48] *Nicholson,* 562 S.W.2d at 308.

[49] 997 F. Supp. 2d 691, 697–98 (E.D. Ky. 2014).

689 (6th Cir.2011) (internal alterations and quotation marks omitted).

Thus, the procedures of the JCC must at least meet the rational basis test. With the public fully protected, the JCC cannot constitutionally justify not awaiting the outcome of the criminal proceedings. Judge Maze has also asserted that there have been failures in the JCC process which include the refusal for informal conferences and the issuance of a subpoena for grand jury transcripts without the required notice under the applicable Supreme Court and criminal and civil rules.

Here, as in *Cornett*, both the JCC and the Chief Justice protected the public interest and the integrity of the judicial process by the temporary safeguards i.e., temporary suspension and the appointment of special judges to handle the judicial responsibilities. Therefore, there is no prejudice to the JCC or the public in staying the civil proceeding.

In weighing the individual constitutional rights of Judge Maze against the JCC process, particularly with her temporary suspension and the appropriate actions of the Chief Justice in providing coverage of her assigned cases, I cannot agree that the JCC process should outweigh Judge Maze's Fifth Amendment and Fourteenth Amendment rights.

And while the majority cites *Lehmann v. Gibson*, 482 S.W.3d 375 (Ky. 2016) as if it supports its holding, through examination of its non-precise test,[50] this court in *Lehmann* actually upheld the lower court's deference to

---

[50] We find it unnecessary to provide an exhaustive list of factors for a trial court's consideration, but we find these to be strong guidance: (1) the extent to which the evidentiary material in the civil and criminal cases overlap; (2) the status of the

having the criminal prosecution case tried first. The *Lehmann* court emphasized the importance of the criminal process and its heightened importance in simultaneous civil and criminal proceedings:

> The Commonwealth and public share a particularly weighty interest in protecting the integrity of the criminal prosecution. The degree to which the issues in the civil and criminal proceedings overlap, then, is particularly important. The more overlap, "the more likely that allowing civil discovery will jeopardize the integrity of the criminal proceeding" as using that discovery may become an "irresistible temptation" to gain an advantage in the criminal proceeding.

*Id.* at 384 (internal footnotes omitted).

Here, the JCC can show no prejudice to its case against Judge Maze by giving deference to the weightier criminal prosecution at hand. No citizens are at risk of harm as the safeguards of temporary removal and special judges are in place. Judge Maze has even been banned from the courthouses except to appear in her criminal cases. In fact, should Judge Maze be convicted, then the JCC case is greatly simplified. Yet Judge Maze's constitutional rights are on the line here, in both the JCC and criminal cases. Should she be improperly removed from office, there is no way to adequately restore her to her position to which she has been elected. Additionally, should the JCC remove her permanently prior to her criminal trial, that fact could be admitted against

---

criminal proceeding; (3) the interests of any parties in staying the civil proceeding; (4) the prejudice to any parties from staying the civil proceeding; [(5)] the interests of persons that are not parties to the litigation; [(6)] court convenience; and [(7)] the public interest in the pending civil and criminal actions.

30

her in the criminal trial. At the very least, should she testify at the JCC hearing, those statements could be used against her in the criminal trial. Therefore, I cannot join the majority.

Keller and Wright, JJ., join.

WRIGHT, J., DISSENTING: As the majority points out, "[t]he rules governing this Court's review of JCC proceedings only allow us to review the propriety of those proceedings upon submission of the JCC's *final order* resolving the proceedings." (Emphasis added.) However, since the JCC did not challenge this Court's procedural ability to address Judge Maze's argument concerning her motion for an additional informal hearing, the majority opinion addresses the merits of her "appeal." I dissent as this is in direct contradiction of our rules and we lack appellate jurisdiction in this matter.

Kentucky Supreme Court Rule (SCR) 4.290 addresses the judicial review of decisions of the Judicial Conduct Commission. Specifically, SCR 4.290(2) specifies that "A notice of appeal of the Commission's *final* order shall be filed . . . ." (Emphasis added.) Furthermore, SCR 4.290(1) states that "To the extent applicable and not inconsistent with SCR 4, the Rules of Civil Procedure (CR) applicable to other types of proceedings shall apply to the judicial review of Commission orders by the Supreme Court." Pursuant to CR 54.02, "A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under Rule 54.02."

As the majority admits, the order Judge Maze requests this Court to appeal was not final. Therefore, we should not review it as an appeal. Rather,

31

this case could have properly come to this Court as a writ action pursuant to CR 76.36 which reads, in pertinent part: "Original proceedings in an appellate court may be prosecuted only against a judge or agency whose decisions may be reviewed as a matter of right by that appellate court."

This is not a mere matter of splitting hairs; rather, it is a jurisdictional dilemma that *must* be dealt with. "Although the question is not raised by the parties or referred to in the briefs, the appellate court should determine for itself whether it is authorized to review the order appealed from." *Hook v. Hook,* 563 S.W.2d 716, 717 (Ky.1978). More recently, we have stated: "As a preliminary matter, this Court's jurisdiction to hear this matter as a direct appeal must be addressed . . . . Though neither party has raised or addressed the issue, this Court must determine for itself that jurisdiction is proper." *Leonard v. Commonwealth* 279 S.W.3d 151, 155 (Ky. 2009), *citing Hubbard v. Hubbard,* 303 Ky. 411, 412, 197 S.W.2d 923, 923 (1946) ("This question is not raised by the record, nor is it referred to in the briefs, but jurisdiction may not be waived, and it can not be conferred by consent of the parties. This court must determine for itself whether it has jurisdiction."). Here, the order in question is "plainly an interlocutory determination. . . . It [is] not reviewable by direct appeal." *Hook,* 563 S.W.2d at 717.

This Court makes the rules—both SCR and CR—for the orderly administration of justice. We should not turn a blind eye to those rules in this case and allow an appeal from a nonfinal order, lest we risk facing an onslaught of such improper "appeals." If we disregard our rules, they become

32

meaningless. Here, we lack appellate jurisdiction and should not entertain this case. For these reasons, I dissent and would dismiss Judge Maze's appeal as improper.

Keller and Lambert, JJ., join.

ENTERED: June 13, 2019.

_____
CHIEF JUSTICE